Ruth HARVEY, Plaintiff-Appellee Appellant on Cross-Appeal,

William H. Daubendiek, II, James L. Daubendiek, Sarah Daubendiek, Stephany Harvey, Susan Harvey, Kathleen Harvey, and All unborn blood descendants of W. H. Daubendiek provided for as Residual Beneficiaries under the Last Will and Testament of W. H. Daubendiek, Deceased, Additional Plaintiffs,

v.

Letha I. LEONARD and F. W. Daubendiek, Defendants,

Eugene Daubendiek and William C. Daubendiek, Defendants-Appellants Appellees on Cross-Appeal,

Robert W. Daubendiek, Additional Defendant.

No. 58586.

Supreme Court of Iowa.

June 28, 1978.

Considered by MOORE, C. J., and MASON,* REES, REYNOLDSON and McCORMICK, JJ.

REES, Justice.

This appeal is from a judgment of the District Court of Palo Alto County in which the trial court found the defendants as trustees of the testamentary trust under the will of W. H. Daubendiek had breached their fiduciary duty to the trust in causing or permitting the trust to lose control of the Jefferson Telephone Company, which had been in the control of the decedent. Two of the defendants, Eugene and William C. Daubendiek, have appealed and the plaintiff has cross-appealed claiming that the trial court was in error in not removing the trustees for the breach of their fiduciary duty and in not assessing properly the damages caused to the trust.

The controversy which was seminal to this litigation had its origin shortly after the death of W. H. Daubendiek, grandfather of the original plaintiff and of the defendants Eugene and William C. Daubendiek. A genealogical table, or chart, which was introduced into the record on the trial of this case as an exhibit, is here set out to indicate the identity of the parties to the action and their relationship to W. H. Daubendiek:

[See following illustration.]

Johnson, Burnquist, Erb, Latham & Gibb and James L. Kramer, Fort Dodge, for defendants-appellants appellees on cross-appeal Eugene and William C. Daubendiek.

Whitesell Law Firm, Iowa Falls, for plaintiff-appellee appellant on cross-appeal Ruth Harvey.

Kersten, Opheim, Carlson & Estes, Fort Dodge, for defendant Letha I. Leonard.

Charles F. Knudson, Marcus, for defendant F. W. Daubendiek.

* Serving after June 14, 1978 by special assignment.

```
                W. H. DAUBENDIEK  -  MATILDA DAUBENDIEK
                (died Sept. 16,       (wife - died
                1948)                  Sept. 25, 1969)
                                                                    F. W.
                                                                    DAUBENDIEK
                                                                    (nephew)
                                                                    Age 71

C. H. DAUBENDIEK  -  BERTHA K. DAUBENDIEK          LETHA LEONARD
(son - died              (wife)                    (daughter)
Sept. 26, 1962)                                    (no issue) Age 79

JOE E.        BERTHA A.     RUTH      ROBERT       WM. C.      GENE
DAUBENDIEK    DAUBENDIEK    HARVEY    DAUBENDIEK   DAUBENDIEK  DAUBENDIEK
(no issue)    (no issue)    born      (no issue)   born        born
born          born          12/9/27   born         3/24/17     3/12/23
10/9/24       1/31/16                 9/27/18

                            STEPHANY HARVEY        WILLIAM H.  JAMES L.
                            born 11/22/48          DAUBENDIEK  DAUBENDIEK
                            SUSAN HARVEY           II          born
                            born 12/17/50          born        10/21/49
                            KATHLEEN HARVEY        4/5/49      SARAH
                            born 7/29/52                       DAUBENDIEK
                                                               born
                                                               11/25/51
```

In its findings of fact, the trial court characterized this litigation as "one of those miserable squabbles in a family of talented but hard-headed people". We incline to agree with the trial court's appraisal of the litigation.

W. H. Daubendiek, as is shown in the foregoing chart, died on September 16, 1948. In his will he provided for a testamentary trust by the provisions of which he gave to his wife Matilda, his son C. H. Daubendiek, his daughter the defendant Letha L. Leonard, his nephew F. W. Daubendiek, and his grandchildren including the plaintiff and the two appealing defendants, beneficial interests in the trust in various amounts; such interests are basically income interests. By its terms the trust was to terminate 21 years after the death of the survivor of the above named beneficiaries and "any other lineal descendants of mine in being at the time of my death.

Daubendiek nominated in his will his wife Matilda, his daughter Letha Leonard, his nephew F. W. Daubendiek, his son C. H. Daubendiek, and his grandson William C. Daubendiek as the executors of the estate and trustees of the testamentary trust. With relation to the obligations and duties of the trustees respecting the assets of the trust, the will made the following provision:

"Any individual Trustee under this will shall have the right to vote the stock of any corporation held by him or her as such Trustee, in favor of his or her election as a director of such corporation and, as such director, may vote in favor of his or her election as an officer of any such corporation and of the payment of any salary to him or her, as such officer or

director, which he or she may deem reasonable."

Article Five of the will provided:

"In the administering of this trust and in the accounting for and distribution of the trust property, my Trustees shall be held only to ordinary care and faithfulness, and shall in nowise be liable or accountable for honest errors of judgment, nor for errors or wrongdoing of legal counsel, agents, or servants, nor for interest on funds temporarily idle. The judgments and discretion of my Trustees shall be final in any matters so long as they act in good faith. My Trustees shall have the right at all times and in all matters to act upon any information or evidence deemed by them reliable, without incurring any personal liability or responsibility of any kind or in any manner."

With regard to the accounting of the trustees, the trust provisions in Article Six of the will provided:

"My Trustees shall keep a true, complete, and permanent record of this trust instrument, of any resignations, appointments, or acceptance of trustees, of any and all assets received by them as Trustees, of any and all receipts and disbursements by them as Trustees, of any and all debts and liabilities incurred by them as Trustees, or chargeable in any manner against the trust property, and of any and all proceedings and decisions by them as Trustees, which record shall be preserved and shall be subject to examination at any and all reasonable times by any beneficiary of this trust. At least once each year the Trustees shall prepare, or cause to be prepared, a statement showing the condition of the trust, and the receipts and disbursements of the Trustees for the preceding calendar or fiscal year."

At the death of W. H. Daubendiek his estate had a controlling interest in the Jefferson Telephone Company by the direct and indirect ownership of shares in that company. C. H. Daubendiek had the management control of the Jefferson Telephone Company with the other trustees dividing the management of the other assets of the trust among themselves. In December, 1948 the Board of Directors of the Jefferson Telephone Company voted to give a cash bonus to five of its employees with the requirement that the bonus be utilized in purchasing stock of Jefferson Telephone Company at book value. These employees included C. H. Daubendiek and the defendants William C. and Eugene Daubendiek and two employees unrelated to the Daubendiek family. In July of 1949 William C. and Eugene each purchased 1,000 shares of the Jefferson Telephone Company with certificates being issues to them. The three other trustees, including the defendants F. W. Daubendiek and Letha Leonard, who did not participate in the stock purchase transaction, later learned that such stock transactions caused the trust to lose control of the Jefferson Telephone Company. At that time, C. H. Daubendiek advised the other members of the family in writing that such action was taken so that he and his sons Eugene and William C. could manage the telephone company without the interference of any of the other trustees. The trustees were then advised by Arthur Smith, an attorney representing other members of the family, that such stock transfers were illegal, and that legal action by the trustees could force a return of the control of the Jefferson Telephone Company to the trust.

The plaintiff Ruth Harvey attended a stockholders' meeting at which Attorney Smith attempted to lay before the stockholders the issue of the illegality of the stock transfers referred to above. Smith was not permitted to speak out at said meeting, but later at a meeting with C. H. Daubendiek, Eugene Daubendiek and William C. Daubendiek he did discuss the illegality of the stock transactions. At such meeting C. H. Daubendiek stated he did not consider the stock transfers as illegal, and refused to take any measures to restore the control of the Jefferson Telephone Company to the trust. The trustees who did not participate in the stock transfer took no

legal action with regard to such stock transactions or to force the return of the control of Jefferson Telephone Company to the trust.

On December 23, 1950 the trustees and executors of the W. H. Daubendiek Estate filed their final report and application for discharge as executors. Neither the final report nor the order approving the same entered in January of 1951 made any reference to the stock transfers which provide the genesis of this controversy, or the loss of control of the Jefferson Telephone Company by the trust estate. During the period between the entry of the order approving the final report of the estate of W. H. Daubendiek and the commencement of this suit, several opportunities were afforded the trust to exercise its preemptive rights to certain stock issues, but such rights were not exercised by the trust. In 1962, C. H. Daubendiek died and was succeeded as trustee by his son Eugene Daubendiek who, then with his brother William C. Daubendiek, assumed the management of the Jefferson Telephone Company. Matilda, the mother of C. H. Daubendiek and the widow of W. H. Daubendiek, died in 1969.

After a continuing dispute with the trustees, plaintiff Ruth Harvey instituted the within action in equity against the present trustees on May 1, 1972. In her petition she prayed that the defendants be ordered to give a full and complete accounting of their individual trusteeships and to reveal all matters relating to the trust, that they be removed as trustees and be required to make full restitution for any and all damages caused to the trust by their failure to fulfill their obligations as fiduciaries thereof. She further prayed that the trustees at their own expense provide complete accountings and statements of the condition of the trust for each year they were acting as trustees. Upon motion of the parties, Robert W. Daubendiek, a son of C. H. Daubendiek and a brother of Eugene and William C. Daubendiek, was added as a party defendant. The plaintiff's petition was later amended to include additional parties plaintiff. The trial court entered default judgments against the additional parties plaintiff, save and except for Sarah, the daughter of Eugene Daubendiek, who was not served with notice.

After an extended trial, the trial court found that the trustees had acted in bad faith in permitting the trust to lose control of the Jefferson Telephone Company to the detriment of the trust estate. Specifically, the court found that C. H. Daubendiek and the defendant William C. Daubendiek engaged in a self-dealing transaction in allowing the stock transfers to themselves to the detriment of the trust, and that such actions violated the standard of good faith required of trustees and enjoined upon them by the provisions of the trust instrument. The court further found that Eugene Daubendiek violated such standard when he became a trustee in 1962, because he was then aware of the transfers and made no attempt to rectify the situation for the benefit of the trust. All of the trustees at the time of the transfers were held to be acting in bad faith since they did nothing to correct the injustice done to the trust and its beneficiaries. The court found that as a result of the action of the trustees, or the lack of action on the part of some of them, the trust suffered loss to the extent of $112,000 on the basis of the book value of the stock of Jefferson Telephone Company. The court did not attempt to include dividend income lost to the trust as a part of said computation.

Based upon such findings, and after making conclusions of law, the trial court entered judgment against the defendants William C. and Eugene Daubendiek individually for the sum of $53,000 each, and against the defendants Letha I. Leonard and F. W. Daubendiek for $3,000 each, and directed that said sums were to be paid to and become a part of the corpus of the trust. Judgment was also entered in favor of the plaintiff Ruth Harvey and against Letha Leonard, F. W. Daubendiek, William C. Daubendiek and Eugene Daubendiek for the aggregate sum of $18,000 to apply on Ruth Harvey's attorneys' fees, accountants' fees and other expenses of suit, and directed that said $18,000 judgment should be

entered against the trustees individually, together with the costs of the action.

The trial court found the record showed that except for the above breaches of duty, the trustees had acted for the benefit of the trust and should not be removed. The court required no further accounting from the trustees, having found that plaintiff Harvey had accepted the prior statements of condition of the trust from the trustees for over 20 years without objecting and, therefore, she was barred by laches, estoppel and the doctrine of waiver from now requesting or being entitled to such an accounting.

Defendants William C. and Eugene Daubendiek appealed from the judgment and decree of the trial court, and the original plaintiff Ruth Harvey cross-appealed as to all of the defendants. F. W. Daubendiek and Letha Leonard have not appealed, and filed a motion to dismiss the cross-appeal against them, since it was not filed within 30 days after the final decree was entered and was not a cross-appeal as to them because they did not appeal. By order of this court the motion to dismiss the cross-appeal was ordered to be considered with the main appeal, and that question will be addressed hereinafter.

The parties to this appeal present the following issues for review:

(1) Whether the defendants in their fiduciary capacity acted in bad faith in allowing the trust to lose control of the Jefferson Telephone Company without taking action to prevent such loss. This main issue can be broken down into several subissues which include:

(a) Whether C. H. Daubendiek and William C. Daubendiek acted in bad faith when they acted to issue the stock of Jefferson Telephone Company to themselves and Eugene Daubendiek which caused the trust to lose control of the company.

(b) Whether Letha Leonard or F. W. Daubendiek acted in bad faith by permitting control to be lost to the trust by possible illegal means without taking proper action to rectify the loss of control by the trust.

(c) Whether Eugene Daubendiek breached his fiduciary duty by acting in bad faith when he refused to take action to recover the loss of control by the corporation caused by the 12-year old stock transfers which were known to him at the time he became a trustee.

(2) Whether plaintiff Ruth Harvey was barred by the doctrine of laches from asserting the breach of the defendants' fiduciary duty.

(3) Whether the plaintiff's action is barred by the statute of limitations.

(4) Whether the defendants should be required to make an accounting of their management of the trust at their own expense or whether plaintiff is barred by the doctrine of laches from securing such accounting since she accepted prior reports from the trustees without complaint until the institution of the within action.

(5) Whether the trial court erred in that the award of damages to the trust in not taking into account the fact the trustees might have had to sell other assets to purchase additional shares needed to maintain control of the company, in not ordering the defendants to return to the trust estate the requisite number of shares in the Jefferson Telephone Company in order to restore control of the company to the trust, in not requiring that an appraisal of the fair market value of the equity lost to the trust be obtained to properly measure damages, and in failing to include dividend income lost to the trust by the actions of the defendants in its award of damages.

(6) Whether trial court was correct in finding that there was insufficient evidence to justify the award of punitive damages against the defendants.

(7) Whether the trial court was correct in finding there was insufficient evidence to justify the removal of the defendants as trustees.

(8) Whether the trial court was correct in its finding that the fair and reasonable value of the plaintiff's attorneys' fees,

accounting fees, and suit expenses was the sum of $18,000, and in requiring the defendants individually to pay said amount plus court costs.

(9) Whether the motions of defendants Letha Leonard and W. F. Daubendiek to dismiss plaintiff's cross-appeal on the ground that neither of said defendants had appealed the decision of the trial court so that plaintiff's appeal was not a cross-appeal as to them and was, therefore, not timely filed within the 30-day period required to appeal.

I. This action is in equity, and our review is de novo. Rule 4, Rules of Appellate Procedure.

II. The first issue which we must confront is whether the defendants breached their fiduciary duty to the beneficiaries of the trust and to the trust estate itself. The plaintiff Harvey claims defendants acted in bad faith in allowing the trust to lose control of the Jefferson Telephone Company by permitting to go legally unchallenged the stock transfers to C. H. Daubendiek and defendants William C. and Eugene Daubendiek. The plaintiff claims the trustees at that time knew the stock transfers were illegal and detrimental to the trust. With regard to the defendants who have appealed, the plaintiff claims William C. Daubendiek violated his duty of loyalty to the beneficiaries and acted in bad faith in participating in the stock transfers which caused the trust to lose its equity position in the company and that Eugene Daubendiek violated his duty of loyalty and acted in bad faith at the time he became trustee in failing to take action to correct and rectify the loss suffered by the trust due to such claimed illegal stock transactions. On the other hand, the defendants who have appealed claim they acted in good faith since the stock transfers were undertaken in order to protect the company by creating an incentive to key employees and by preventing the other trustees from interfering with the management of the Jefferson Telephone Company.

It is a well established doctrine of trust law that trustees have a duty of loyalty to the trust they are administering and to its beneficiaries, and must act in good faith in all actions affecting the trust. See *Johnson v. Johnson,* 242 Iowa 27, 29, 45 N.W.2d 573, 574. See also Restatement (Second) of Trusts, § 170 (1959); Scott on Trusts, § 170 (3rd ed. 1967). It appears clear to us the foregoing standard was not obviated by the testator's limitation on the liability of the trustees to actions which were done in bad faith.

On the basis of the foregoing standard of loyalty, we must hold the record establishes the defendants violated their duty of loyalty to the trust and its beneficiaries. This breach is most evident in the case of defendant William C. Daubendiek who accepted stock issued to him in keeping with his father's plan to reduce the control the trust had over the company as well as to insure the retention of key employees. It is clear to us that as a general rule trustees are prohibited from engaging in self-dealing transactions with the trust and from obtaining personal advantage from their dealings with trust property. *Van Gorp v. Van Gorp,* 229 Iowa 1259, 1261, 296 N.W. 354, 356; *Linsley v. Strang,* 149 Iowa 690, 694–696, 126 N.W. 941, 942–943. This case law has been codified in § 633.155, The Code, 1977, passed since the self-dealing transactions in the present case, which prohibits self-dealing transactions on the part of fiduciaries unless such transactions are allowed by court order after all interested persons have received notice. The action of William C. Daubendiek, in accepting such stock with the knowledge that one of the consequences of the issue of stock to him was to reduce the trust control of the telephone company, was an obvious breach of his fiduciary duty.

Defendants have cited authority to us in which a trust instrument permitted self-dealing on the part of a trustee which occasioned loss of the corpus. See *In re Krause's Estate,* 19 Mich.App. 155, 172 N.W.2d 468 (1969); *Appeal of Burke,* 378 Pa. 616, 108 A.2d 58, 47 A.L.R.2d 1367 (1954); *Rosencrans v. Fry,* 21 N.J.Super.

289, 91 A.2d 162 (1952). Such cited cases, however, are distinguishable from the situation before us in this case since they all involved incidents in which the self-dealing transactions were specifically contemplated by the testator or the settlor of the trust in each case. In this case, although the testator did allow for some self-interest transactions with regard to the trustees' voting shares of stock, it is not clear that the testator conceived and approved of the situation in which some of the trustees would secure transfer of stock to themselves individually, resulting in a loss of control of the corporation.

Further, all of the defendants in their fiduciary capacity, were acting in a manner inimical to the best interests of the trust in failing to take corrective action at the time of the stock transfers in 1948 and 1949, in order to prevent the trust's loss of control of the telephone company. The record is clear that the trustees not participating in the stock transfers made a protest about the transactions through their attorney (Smith) but failed to take legal action to prevent the transfers from occurring or to secure restoration of the ownership of the stock by the trust. As a result of such lack of legal action, such defendants also contributed to the loss suffered by the trust and breached their duty of loyalty to the beneficiaries and to act in good faith. Such trustees as beneficiaries could agree to permit such self-dealing so long as all beneficiaries agreed and the trust instrument permitted it. See Scott on Trust, § 170 at 1298 (3rd ed. 1967). However, the approval of all beneficiaries was not secured, particularly, the approval of the remaindermen who were detrimented in the greatest degree by the loss of equity control in the Jefferson Telephone Company.

Even though Eugene Daubendiek was not a fiduciary at the time such stock transfers occurred, he became a fiduciary later with knowledge of such self-dealing transactions in which he participated and did nothing to restore the lost control to the trust. Such action, or lack of action, we view as a violation of the duty of Eugene Daubendiek to act in good faith.

Bottomed on the foregoing rationale, we are inclined to hold, and do hold, that the defendants as trustees breached their duty of loyalty to the beneficiaries of the trust and acted in bad faith for which they would normally be liable.

III. The next issue for consideration is whether the plaintiff is precluded by the doctrine of laches from maintaining this action. The defendants claim the action is barred by the doctrine of laches since the actions and conduct of the defendants in securing the transfer of stock of Jefferson Telephone Company to them occurred something over 20 years prior to the institution of the suit, and that the plaintiff had actual notice and knowledge of the claimed wrongful acts. The plaintiff claims she is not barred by the doctrine of laches, since she had no knowledge of the loss of control of the company until recently. The trial court looked with favor upon the plaintiff's version of the events and refused to apply the doctrine of laches to bar the plaintiff's suit.

We have applied the doctrine of laches to inhibit actions on stale claims from being brought before courts of this state. See *In re Estate of Shivvers,* 240 Iowa 93, 103–104, 34 N.W.2d 632, 637–638. See also *Butler v. Butler,* 253 Iowa 1084, 1121–1122, 114 N.W.2d 595, 617. The Restatement (Second) of Trusts, 219(1) at 511, et seq. (1959), sets forth the following concerning the application of the doctrine of laches to a beneficiary's cause of action against a trustee:

"The beneficiary cannot hold the trustee liable for a breach of trust if he fails to sue the trustee for the breach of trust for so long a time and under such circumstances that it would be inequitable to permit him to hold the trustee liable."

Comments a and b to § 219(1) of the above cited Restatement is as follows:

"a. * * *

"In determining whether the beneficiary of a trust is precluded by laches from holding the trustee liable for breach

of trust, the court will consider among others the following factors: (1) the length of time which has elapsed between the commission of the breach of trust and the bringing of suit; (2) whether the beneficiary knew or had reason to know of the breach of trust; (3) whether the beneficiary was under an incapacity; (4) whether the beneficiary's interest was presently enjoyable or enjoyable only in the future; (5) whether the beneficiary had complained of the breach of trust; (6) the reason for the delays of the beneficiary in suing; (7) change of position by the trustee, including the loss of rights against third persons; (8) the death of witnesses or parties; (9) hardship to the beneficiary if relief is not given; (10) hardship to the trustee if relief is given.

"b. * * * The length of time necessary to bar the beneficiary from holding the trustee liable for breach of trust depends upon the circumstances. In the absence of special circumstances the beneficiary is barred if the period of the Statute of Limitations applicable to actions at law in analogous situations has run."

The plaintiff suggests the doctrine of laches should not be applied against her in this case since she was not aware of the loss until a year or two just before this action was commenced and such lack of knowledge was a result of the fraudulent concealment of information by the trustees.

Our review of the record indicates to us there is no support for the plaintiff's position in this regard. The minutes of the meetings of the Jefferson Telephone Company indicate, conclusively to us, that Ruth Harvey was present at a stockholders' meeting in 1950, at which her father, C. H. Daubendiek, and her brothers, the defendants William C. and Eugene Daubendiek, were present, and then knew, or should have known, at that time of the transfer of the stock which is the subject matter of this action.

The record further indicates she met with the other stockholders of the company at a stockholders' meeting in 1962,

when the transfers were allegedly discussed and she then knew, or should have known in the exercise of proper diligence, that her brothers and not the trust had control of the Jefferson Telephone Company. Since she was aware of such facts, at least by 1962, and delayed the institution of the within suit, being at the time under no incapacity, and since many witnesses, including interested parties namely, C. H. Daubendiek and Matilda Daubendiek, the father and grandmother of the plaintiff, are now dead, and the defendants have relied on the finality of the stock transfers, we incline to the view that the doctrine of laches is applicable to preclude the plaintiff from maintaining this suit. Her claim of lack of knowledge of the stock transfers would also concommitantly involve her lack of knowledge of the fact her grandfather W. H. Daubendiek had controlled the company, a fact which was apparent to her as a stockholder and as a member of the Daubendiek family.

The text writers have spoken to the question of the application of the doctrine of laches to factual situations such as the one involved in this case. In Bogert, Trusts and Trustees, § 949 (2nd ed. 1962), we find:

"A cestui que trust cannot sit idly by and close his eyes to what is going on around him. 'One who would repel the imputation of laches on the score of ignorance of his rights must be without fault in remaining so long in ignorance of those rights. Indolent ignorance and indifference will no more avail than will voluntary ignorance of one's rights.' As a Pennsylvania court has said: 'Laches is not excused by simply saying: "I did not know." If by diligence a fact can be ascertained the want of knowledge so caused is no excuse for a stale claim. The test is not what the plaintiff knows, 'but what he might have known, by the use of the means of information within his reach, with the vigilance the law requires of him.' ' "

In In re Estate of Shivvers, 240 Iowa at 103–104, 34 N.W.2d at 637, in addressing the question of the application of the doc-

trine of laches to a factual situation quite similar to that in the matter before us here, we said:

 "As almost 25 years have elapsed since the estate was closed, we hold, as did the trial court, that appellants are barred by the doctrine of laches. This is an equitable doctrine and has for its basis a public policy. Laches relate to the delay in the assertion or prosecution of a claim working to the prejudice or disadvantage of another. In 30 C.J.S., Equity, § 112, page 520, et seq., the doctrine of laches was discussed. It was defined, 'Laches is such delay in enforcing one's rights as works disadvantage to another.' (citations). Therein it was held that equity will not assist those who have slept upon their rights and that such courts will discourage laches and delay in enforcing their rights, apart from any question of statutory limitation. (citations). \* \* \* 'Laches' is a doctrine of equity based on a lack of diligence and good faith in invoking the court's jurisdiction."

In *Tietjen v. Hastie,* 342 F.Supp. 1195, 1198 (S.D.Iowa 1972), the court said:

 "Many material witnesses are now deceased. The memories of the remaining witnesses are extremely clouded, due to the passage of a great amount of time. Many material records have long since been lost or destroyed. All defendants have relied on the finality of the State court proceedings for 22 years and have ordered their affairs accordingly. For these compelling reasons, the Court concludes that the plaintiffs are equitably estopped from bringing these causes of action against these defendants by reason of laches. (citations)."

Certainly, in the intervening period between the transfer of the stock complained of in this case, and the institution of the plaintiff's suit, the defendants have "ordered their affairs accordingly", and after they have given 22 years of productive effort and enterprise toward the development of the business of the Jefferson Telephone Company as a viable and continuing business concern, it conclusively appears to us that it would be inequitable and unjust to permit the plaintiff to maintain her suit against them and to permit her to prevail in her endeavors to recover money judgments and other relief against the defendants. The plaintiff slept on her rights with full knowledge of all of the facts and circumstances attendant to the transfer of the stock to William C. and Eugene Daubendiek. The doctrine of laches must be applied against her in all fairness and equity and the trial court must be reversed.

 IV. Closely related to the laches issue is the question as to whether the action of the plaintiff is barred by the application of any statute of limitations. The plaintiff contends she was not barred from maintaining her action by any statute of limitations since the trustees concealed their breach of trust from her. The appealing defendants insist that § 638.36, The Code, 1950, barred her action since such a claimed breach, if any, occurred during the administration of the estate and she did not object to the final report after receiving notice. The defendants alternatively suggest that the action is barred on the ground she was aware of the loss of control in 1962 and of any fraud committed by the defendants against the trust and its beneficiaries and did not act within five years as is required by §§ 614.1(4) and 614.4, The Code, 1971. There is no merit to the defendants' contention plaintiff was barred from maintaining her action by the application of § 638.36, The Code, 1950, because she did not object to the final report due to the fact the transfer of stock and consequent loss of control of the Jefferson Telephone Company was not reported in the final report. However, we are abidingly satisfied plaintiff was aware of the loss of control of the company by the trust and the fact that the defendants were in control of the company at least by 1962, and § 614.1(4) does apply to bar her action since she was aware of her cause of action in 1962 and did not institute the same within the five-year time period required by the statute.

 V. The next issue for resolution is whether the trustees should be required to

submit an accounting of their management of the trust. Plaintiff contends the record supports the need for this accounting while the defendants suggest such request is barred by the application of the doctrine of laches. The record shows all of the beneficiaries of the trust, including the plaintiff, received statements at regular intervals showing the condition of the trust. These statements showed the receipts and disbursements of the trust without showing underlying changes such as the loss of control of the Jefferson Telephone Company. The trial court did not require an accounting as requested by the plaintiff on the ground that the plaintiff was barred by the doctrine of laches.

Trustees are required to keep a proper accounting of the stewardship of their trusts. Restatement (Second) of Trust, §§ 172 and 173. We conclude that even though the statements sent to the beneficiaries were not in detailed form and gave only a record of receipts and disbursements without disclosing changes in the condition and the values of the assets of the trust, the plaintiff cannot now be heard to object to the reports and to seek new accountings at the defendants' expense, since she accepted the statements of the trust in former years without complaint and is now barred by the operation of the doctrine of laches in keeping with our conclusions in Division II of this opinion.

VI. We deem it unnecessary to treat the question raised in the next issue stated for review by the plaintiff which concerns errors committed by the trial court in computing an award of damages. In light of our determination the trial court must be reversed and that the plaintiff is barred by the application of the doctrine of laches from the maintenance of her suit, no good purpose will be served by an extended discussion of the award of damages. As plaintiff cannot maintain her suit, no damages may be awarded against the trustees.

VII. We deem it unnecessary to unduly extend this opinion by discoursing upon the question as to whether the trial

court was correct in refusing to allow punitive damages against the defendant-trustees. In view of our conclusion the award of compensatory damages must be reversed, there is no basis under the law of this jurisdiction for an award of punitive damages. See *Wolder v. Rahm,* 249 N.W.2d 630, 632 (Iowa 1977) and citations.

VIII. The plaintiff contends trial court acted improperly in failing to remove the trustees from office. Courts in this state have a wide latitude of discretion in considering whether a trustee may be removed and have consistently declined to so do unless such action is in the best interests of the trust and its beneficiaries. *Anderson v. Telsrow,* 237 Iowa 568, 578, 21 N.W.2d 781, 786; *Humphreys v. Ralls,* 223 Iowa 770, 772, 273 N.W. 865, 866. In the exercise of its discretion, trial court refused to remove the trustees out of consideration of the fact that except for the breach of trust having to do with the transfer of stock to themselves and in view of the fact that they had managed the trust property with substantial increases in the trust income and corpus. We concur with the trial court in the view that the overall performance of the trustees in the interest of the trust outweighed the breach of trust that occurred and that the best interests of the beneficiaries of the trust will be better served by having the trustees continue in their positions. Further, we are of the opinion the plaintiff's action to remove the trustees is barred by the application of the doctrine of laches.

IX. Both parties to this appeal insist the trial court erred in making its award of $18,000 for plaintiff's expenses of suit including attorneys' and accountants' fees, and in its order that the defendants pay the costs of the action. Such award was entered against the defendant trustees personally. The defendants claim that either the allowance of plaintiff's expenses should not be reimbursable from them personally, or that the present amount is reasonable and should be charged against the trust. The defendants also seek to have fees and expenses incurred by them in connection

with the defense of the lawsuit impressed against the trust. The plaintiff feels she should be awarded more for her attorneys and accounting expenses than the $18,000 ordered by the court.

 Since we reverse the award of monetary damages, we conclude the court's allowance of $18,000 to the plaintiff for expenses to be paid by the trustees personally must also be reversed. The parties shall bear the costs of either maintaining or defending this lawsuit personally, and shall be entitled to no reimbursement from the trust estate. We reach this conclusion with respect to the trustees in view of the fact that they did in fact breach their fiduciary duty to the trust and were protected only by the application of the doctrine of laches and the statute of limitations. This case is remanded to the trial court only for the purpose of assessing costs, one-half to the plaintiff and one-half to the defendants-trustees.

X. The final issue involved in this case is raised by the defendants Letha Leonard and F. W. Daubendiek, in which they assert the plaintiff's cross-appeal against them should be dismissed since the appeal was not filed within 30 days of the final judgment.

The final judgment in this case was entered on July 3, 1975. Defendants William C. and Eugene Daubendiek filed timely notice of appeal on August 4, 1975, in accordance with rule 335, Rules of Civil Procedure. The plaintiff filed a notice of cross-appeal on August 7, 1975, which was within the time for a cross-appeal but not for a direct appeal.

Defendants Letha Leonard and F. W. Daubendiek filed motions to dismiss the cross-appeal as to them as they were not appellants and the notice of appeal was not served upon them within the 30-day period as then provided in Rule 335, R.C.P., (now rule 5, Rules of Appellate Procedure). Plaintiff suggests Leonard and F. W. Daubendiek are necessary parties to the appeal in order to accomplish a complete de novo review of the case, and asks that the motions to dismiss be overruled.

Rule 335, R.C.P., provided that a party may appeal within 30 days of a final judgment and may cross-appeal within the same 30-day period or within five days of an appeal. Since Leonard and F. W. Daubendiek did not appeal, plaintiff's cross-appeal against them was not timely under rule 335, R.C.P., and their motions to dismiss must be granted. Consequently, the trial court's judgment is binding against the defendants Letha Leonard and F. W. Daubendiek since they did not appeal therefrom and are not entitled to benefits from this opinion. See 686.4, The Code, 1975.

The motion to dismiss the cross-appeal against Letha Leonard and F. W. Daubendiek is sustained.

XI. We therefore reverse the trial court on the appeal of defendants-appellants, and affirm in part and dismiss in part the cross-appeal of plaintiff.

This case is remanded only for the purpose of assessing and taxing costs in conformity with this opinion.

REVERSED ON APPELLANT'S APPEAL, AFFIRMED IN PART AND DISMISSED IN PART ON CROSS–APPEAL AND REMANDED WITH INSTRUCTIONS.