# IN THE COURT OF APPEALS OF IOWA

No. 23-0687
Filed April 24, 2024

**IN THE MATTER OF THE HERTHEL C. UHL REVOCABLE TRUST,**

**ERIC DONALD HENNINGS, Individually and as Trustee of the Herthel C. Uhl Revocable Trust,**
    Appellant,

**vs.**

**SCOTT HENNINGS, BRIAN HENNINGS, and MARK HENNINGS,**
    Appellees.
_____

Appeal from the Iowa District Court for Woodbury County, Patrick H. Tott, Judge.

A trustee, in his official and individual capacities, appeals a district court ruling denying his petition for authority to sell trust real estate. **AFFIRMED AND REMANDED WITH DIRECTIONS.**

David C. Briese of Crary, Huff, Ringgenberg, Hartnett & Storm, P.C., Sioux City, for appellant Eric Hennings, individually.

Joel D. Voss and Daniel D. Dykstra of Heidman Law Firm, P.L.L.C., Sioux City, for appellant Eric Hennings as trustee.

Brody D. Swanson and Kale B. Rogers of Peters Law Firm, P.C., Council Bluffs, for appellees.

Heard by Tabor, P.J., and Badding and Buller, JJ.

**BADDING, Judge.**

Can a trustee sell real estate belonging to a trust after it terminates without a provision in the trust allowing him to do so?  The district court said no, relying on our supreme court's decisions in *In re Estate of Jurgens*, 31 N.W.2d 633 (Iowa 1948) and *Noe v. Hawkeye Bank*, 570 N.W.2d 114 (Iowa 1997).  While the court recognized that it retained control over the property after the trust terminated as part of the winding-up process, the court declined to approve the sale as necessary or in the best interests of the trust and its beneficiaries.  Eric Hennings appeals this ruling, as the trustee and individually as beneficiary of the trust seeking approval of the sale to himself.  We affirm.

## I.  Background Facts and Proceedings

This dispute centers around 135 acres of farmland in Woodbury County belonging to the Herthel C. Uhl Revocable Trust, which Uhl established in 2001. She acted as its trustee until 2007, when she resigned because of her age and health.  Uhl's grandson, Eric Hennings, stepped into her place under the trust agreement.  Uhl passed away in 2009.

Upon Uhl's death, the trust agreement provided that the trustee was to pay Uhl's daughter, Terry Hennings, $750 per month from the income of the trust.  At Terry's death, the trustee was to maintain the trust for the benefit of Uhl's grandsons (Terry's sons)—Mark, Brian, Jason, Scott, and Eric.  Terry passed away in July 2022, when Eric and his brothers were all older than twenty-five.  The Trust agreement provided:

> When there is no living grandchild of mine under the age of twenty-five (25), my Trustee shall divide the trust into equal shares, one (1) share for each then living grandchild of mine and one (1)

share for the then living descendants, collectively, of each deceased grandchild of mine. My Trustee shall distribute these shares to those living grandchildren and per stirpes to the descendants of each deceased grandchild of mine, and the trust shall terminate. . . .

In early October 2022, Eric asked the trust's attorney to have the farmland appraised. The attorney contacted Doug Helvig, an experienced real estate broker and farm appraiser, to perform the appraisal. After inspecting the property, Helvig estimated its value at $10,500 per acre, or $1,420,650 total.

The next month, the trust's attorney sent a letter to the five beneficiaries notifying them of the appraised value for the farmland and Eric's intent to sell it. A copy of the appraisal was enclosed with the letter, which stated: "Eric Hennings, as trustee, determined that he wants to offer it for purchase by the beneficiaries first and then if no one is interested it would likely go to an auction." The beneficiaries were instructed to submit a bid to the attorney by December 5 if they were "interested in purchasing the property at the appraised value or above." That deadline passed with no bids from any of the beneficiaries. So Eric executed an agreement with the trust to buy the farmland for himself at its appraised value.

In March 2023, Eric filed a petition in his role as trustee, seeking court approval of his purchase agreement with the trust and authorization to sell the real estate. The petition asserted that the "real estate must be sold to facilitate the distribution and closure of the Trust" and that the proposed sale to Eric "is in the best interests of the Trust and of the distributees." Three of Eric's brothers—Mark, Brian, and Scott—did not agree.[1] They resisted the petition, arguing that the trustee was "not required to liquidate the real estate to make a final distribution to

---

[1] The other brother, Jason, did not appear or participate in the proceedings.

the remaining beneficiaries." They also contended that Helvig's appraisal was inaccurate and that the property could be worth as much as $4 million according to a broker evaluation attached to their resistance.

The district court held a hearing on the petition later that month. Eric testified that he could not distribute the Trust's property without liquidating its assets. In his opinion, "[t]he way it was set up was the trust was to wrap up after Terry passed away, meaning the assets would be liquidated or sold, the money would be put into an account, and it'd be divided according to the trust." Eric emphasized that "all five beneficiaries had an opportunity to purchase the property," but he was the only one who made an offer. He acknowledged, however, that he never publicly listed the property for sale. Helvig also testified at the hearing in support of his appraisal, although the real estate broker who authored the broker evaluation did not. Yet the district court admitted the evaluation into evidence over Eric's foundation and hearsay objections.

Following the hearing, the court denied the petition to sell the real estate. The court concluded that the trust terminated at Terry's death since all the grandsons were over twenty-five years old. Because the power of sale granted to the trustee in the trust agreement did not include "the authority to sell the real estate upon the termination of the trust or to otherwise liquidate assets," the court reasoned that Eric now lacked that authority under *Jurgens*, 31 N.W.2d at 634. That case, which the court found was "exactly the same fact pattern" as here, held: "The will contains no provision authorizing appellant to sell the real estate on the termination of the trust. His authority to sell had terminated before the attempted sale here in question." *Id.*; *accord Noe*, 570 N.W.2d at 116. As a result, the court

concluded that it did not need to resolve the question of Eric's proposed self-dealing and "determine whether or not the proposed terms of sale were in the best interests of the trust or not."

In response to Eric's motions to reconsider, the court amended that last conclusion. While the court rejected his efforts to distinguish *Jurgens*, it found Eric was "correct that the Court could still authorize the sale of the real estate as requested." But the court declined to do so, reasoning:

> [T]here was no evidence presented at the time of the hearing that the real estate needs to be sold in order to pay final expenses, taxes, etc. of the trust. The only argument presented for approval of the sale was that the sale terms were "in the best interests of the trust." While the Court agrees with Eric's contention [that] continued litigation is likely to result through a partition or some other similar action if the Court does not approve the sale of the property resulting in a distribution of cash to the beneficiaries, the evidence is far from clear that the proposed sale is in the best interests of the trust or all beneficiaries involved. While it is clear from the evidence presented that the sale is in Eric's bests interests, at least three of the other beneficiaries contend that it would not be in their best interests.

Eric appeals, claiming the court (1) abused its discretion by admitting the broker evaluation and (2) determining that he lacked authority to sell the real estate because the trust had terminated.[2]

## II.    Standard of Review

The parties agree that this case was tried in equity, so our review is de novo. *See In re Tr. No. T-1 of Trimble*, 826 N.W.2d 474, 482 (Iowa 2013); *see also* Iowa Code §§ 633.33 (2023) (establishing whether a probate proceeding is tried in equity or as a law action); 633A.6101 (giving probate court subject matter

---

[2] We have not distinguished between the arguments Eric makes in his individual capacity versus his trustee capacity because they are essentially the same.

jurisdiction over "proceedings concerning the internal affairs of a trust"); *In re Est. of Waterman*, No. 10-0960, 2011 WL 768753, at *3 (Iowa Ct. App. Mar. 7, 2011) (reviewing probate matters involving the sale of property de novo).

## III.    Analysis

Although Eric spends much of his brief arguing about the admission of the broker evaluation into evidence, we make short work of it here. While the district court noted the objecting beneficiaries' belief that the appraisal undervalued the land, the court did not determine the value of the land or rely on the evaluation in reaching its decision. As a result, we fail to see how Eric's substantial rights were prejudiced by its admission. *See* Iowa R. Evid. 5.103(a) ("A party may claim error in a ruling to admit . . . evidence only if the error affects a substantial right of the party . . . ."). We accordingly move on to the substance of the appeal without considering the broker evaluation in our review. *See United Props., Inc. v. Walsmith*, 312 N.W.2d 66, 74 (Iowa Ct. App. 1981) (disregarding challenged evidence in an equity case on de novo review).

In challenging the district court's ruling, Eric focuses on its determination that his authority as trustee to sell the trust real estate terminated when the trust did. For us, that seems to be a side issue. Even if Eric retained the power to sell property after the trust terminated, he still needed the court to approve the transaction because of his proposed self-dealing. *See* Iowa Code § 633A.4202(2)(c). Setting that issue aside for the moment, we nevertheless agree with the district court that this case fits squarely within the facts of *Jurgens* and *Noe*.

Like Eric, the trustee in *Jurgens* tried to sell a portion of a trust's real estate after the trust terminated. 31 N.W.2d at 633. Even though the will empowered the trustee "to sell, dispose of and convey said property at such times and at such prices and upon such terms as to him shall seem for the best interest of all parties concerned," the court found that language "merely authorizes [the trustee] to sell. It does not direct him to do so." *Id.* at 633–34. The court in *Noe* reached the same conclusion under a clause that gave the trustee the power to "sell, exchange, borrow, mortgage, lease, or otherwise dispose of any asset for terms within or extended beyond the term of the trust." 570 N.W.2d at 116. Relying on *Jurgens*, the court in *Noe* reasoned "this language only authorized the trustee to enter into transactions affecting the property during the life of the trust that extended beyond the term of the trust." *Id.* These cases foreclose Eric's argument that similar language in this trust agreement gave him broad authority to sell trust property after the trust terminated.[3] *Cf. Schaal v. Schaal*, 213 N.W. 207, 209 (Iowa 1927) (discussing a provision directing the sale of a trust's real estate when the trust term expired).

Eric also tries to distinguish *Jurgens* and *Noe* by arguing that unlike those trusts, this trust did not terminate until *after* "its assets are distributed to the grandchildren, [and] not upon the death of Terry Hennings and when the grandchildren attain the age of 25." He bases this argument on the "plain language

---

[3] The provision Eric relies on empowers the trustee

> [t]o sell, convey, transfer, and assign, in whole or in part, at public or private sale without appraisal and without approval of any Court, upon any terms which it deems advisable and without liability upon any person, dealing with the Trustee, to see to the application of any money from the property delivered to it.

of the Trust," which lists termination as the last event, after division of the trust into equal shares and distribution of those shares: "When there is no living grandchild of mine under the age of twenty-five (25), my Trustee *shall divide* the trust into equal shares. . . . My Trustee *shall distribute* these shares . . . and the trust *shall terminate*. . . ." (Emphasis added.) Because the shares have not yet been distributed, Eric argues the trust has not terminated. We conclude otherwise.

Our interpretation of a trust is guided by the intent of the settlor. *Little v. Davis*, 974 N.W.2d 70, 76 (Iowa 2022). In analyzing the intent of the settlor, we consult the language of the trust agreement, utilizing the ordinary and usual meaning of the words included. *In re Tr. Known as Spencer Mem'l Fund*, 641 N.W.2d 771, 775 (Iowa 2002). "We consider the document as a whole and reconcile all provisions of the trust when reasonably possible." *In re Steinberg Family Living Tr.*, 894 N.W.2d 463, 468 (Iowa 2017). Upon doing so, we find the language Eric relies on simply describes the normal procedure once the term of a trust expires or its purpose is fulfilled. *See* Iowa Code § 633A.2201(1) (listing the methods by which a trust can terminate).

The term of this trust expired at Terry's death and the grandsons reaching age twenty-five—just like the trust in *Jurgens*, 31 N.W.2d at 634 expired at the death of the grantor's wife, and the trust in *Noe*, 570 N.W.2d at 116 expired five years after the death of the testator. At that point, the trustee's duty to wind up administration of the trust was triggered. "This time ordinarily arrives at the expiration of the period for which the trust was created, not at the time when distribution is actually accomplished." Restatement (Third) of Trusts § 89(a) (Am. L. Inst. 2007). This tracks with Iowa Code section 633A.2201(2), which states,

"On termination of a trust, the trustee may exercise the powers necessary to wind up the affairs of the trust and distribute the trust property to those entitled to the trust property."

Eric finally argues that the "restrictive view of a trustee's powers on termination" in *Jurgens* and *Noe* "no longer applies after adoption of the Trust Code," specifically Iowa Code sections 633A.2201(2), .4402(5), and .4402(32). Similar to section 633A.2201(2) quoted above, the latter two provisions state:

> In addition to the powers conferred by the terms of the trust, a trustee may perform all actions necessary to accomplish the proper management, investment, and distribution of the trust property, including the following powers:
> . . . .
> 5. Acquire or dispose of property, for cash or on credit, at public or private sale, or by exchange.
> . . . .
> 32. Upon termination of the trust, exercise the powers necessary to conclude the administration of the trust and distribute the trust property to the person or persons entitled to the trust property.

Iowa Code § 633A.4402(5), (32). According to Eric, these provisions give him carte blanche to sell real property belonging to the trust after it terminates. We disagree.

For starters, we observe that where possible, we try to read past case law in harmony with the Iowa Trust Code. *See id.* § 633A.1104 ("Except to the extent that [chapter 633A] modifies the common law governing trusts, the common law of trusts shall supplement this trust code."); *Little*, 974 N.W.2d 70 at 74 ("Prior judicial decisions thus remain an integral part of the law of trusts and should be harmonized with the Trust Code."). In our view, *Jurgens* and *Noe* stand for the general proposition that trustees lack power to sell trust property after termination

absent a specific grant of authority from a trust agreement. The court in *Noe* went a bit further in recognizing that without such a grant of authority from a trust agreement, "a power of sale only exists if necessary to effect distribution." 570 N.W.2d at 116. This aligns with sections 633A.2201(2), .4402(5), and .4402(32), which permit a trustee to sell trust property after termination if it can be shown that a sale is "necessary" for distribution or winding up a trust's affairs.

Eric's argument ignores this last point—that each of the statutory provisions he cites includes the word "necessary." Our trust code does not define that term. The objecting beneficiaries suggest that it means "required," asserting "Eric is not required to sell the real estate" and can instead accomplish distribution "via a simple deed conveying the trust property to the beneficiaries in-kind." *See, e.g.*, *Webster's Third New Int'l Dict.* 1510 (Unabridged Ed. 2002) (defining "necessary" to mean "having the character of something that is logically required"). In reply, Eric argues for a broader definition, one that would be "somewhat analogous to 'expedient' or appropriate.'" *Getchell & Martin Lumber & Mfg. Co. v. Des Moines Union Ry. Co.*, 87 N.W. 670, 671 (Iowa 1901). Using that definition, Eric contends that it is necessary to sell the real estate to avoid future litigation with his siblings.

We agree with the district court that this is not a sufficient reason to sell the property—even under Eric's broader definition. Eric points out that if the land is distributed to the beneficiaries as tenants in common, they will very likely need to proceed with a partition action under Iowa Code chapter 651. He argues, "The irony of a future partition proceeding is that it would necessarily be based upon appraisal of the property. Iowa Code § 651.12. Were the Appellees to prevail in forcing a distribution in kind, they would end up forcing a sale based on appraised

value." Not exactly. *See Muhr v. Willenborg*, No. 22-1780, 2024 WL 257005, at \*4 (Iowa Ct. App. Jan. 24, 2024) (noting subchapter III of chapter 651 "reinstated Iowa's preference for partition in kind when it comes to heirs property" and discussing that process). The statutory scheme in subchapter III of chapter 651 "shows our legislature intended heirs property be afforded special protection against partitions by forced judicial sale—a process in which family farmers could be dispossessed of the land they worked or for which they held close sentimental attachment." *Id.* As the district court noted, the "process of sale herein has not followed the same process as would be followed in a partition action."

This leads us to the last problem with Eric's petition—and back to where we started at the beginning of this discussion—his proposed self-dealing. Iowa Code section 633A.4202(1) requires a trustee to "administer the trust solely in the interest of the beneficiaries" and to "act with due regard to their respective interests." *See also Harvey v. Leonard*, 268 N.W.2d 504, 512 (Iowa 1978) ("It is a well established doctrine of trust law that trustees have a duty of loyalty to the trust they are administering and to its beneficiaries, and must act in good faith in all actions affecting the trust."). Consistent with this duty, trustees are generally "prohibited from engaging in self-dealing transactions with the trust and from obtaining personal advantage from their dealings with trust property." *Id.* Self-dealing may, however, be allowed in limited circumstances under section 633A.4202(2), including where the "transaction is approved by the court after notice to interested parties."[4] Iowa Code § 633A.4202(2)(c).

---

[4] The other circumstances are where self-dealing is "expressly authorized by the terms of the trust" or the "beneficiary consented to or affirmed the transaction or

In seeking court approval of the sale to himself, Eric only argued "that the sale terms were 'in the best interests of the trust.'" The court rejected this argument, reasoning:

> While it may ultimately be determined that the appraised value suggested by Eric is the fair market value of the property, it is not uncommon, especially with farm ground, that a final sale price may be for more than what the appraised value is. Without the benefit of advertising, etc. it is unknown. While the other beneficiaries have not expressed a desire to purchase the property for the appraised value themselves, this does not mean that an outside third party may not.

On appeal, Eric argues that a "transaction with a fiduciary will be upheld where the purchase price is fair, even against claims of self-dealing." He cites *In re Estate of Zenisek*, No. 08-0938, 2009 WL 1211981 (Iowa Ct. App. May 6, 2009) for that proposition. That case, however, involved a party's request to remove an intestate estate's administrators for alleged self-dealing. *Zenisek*, 2009 WL 1211981, at *2. In affirming the denial of that request, we found no evidence to support the "claim of self-dealing on the part of the administrators as they have simply offered to purchase the farmland if approved to do so by the court." *Id.* But we did not approve the sale, noting only that the district court's appointment of a special administrator "alleviated any potential conflict of interest created by the administrators' offer to purchase the farmland." *Id.* The special administrator was authorized to evaluate the offer to buy the real estate, obtain an updated appraisal, investigate methods of marketing the real estate to maximize its value to the heir, and make a recommendation on any purchase. *Id.* The same circumstances are

---

released the trustee from liability." Iowa Code § 633A.4202(2)(a), (b). Eric does not contend either of these apply.

not present here. *Cf.* Restatement (Third) of Trusts § 78 cmt. c(1) (Am. L. Inst. 2007) ("Ordinarily, for example, the court will not permit a trustee to purchase trust property if there are other available purchasers willing to pay the same price the trustee is willing to pay.").

Yet Eric asserts that because the objecting beneficiaries offered nothing but "pure speculation and distrust as the basis for their objection," with no competing admissible valuation, the court should have approved of his proposed self-dealing. The burden, however, is on Eric "to show fair dealing in all matters within the fiduciary obligation." *In re Est. of Snapp*, 502 N.W.2d 29, 32 (Iowa Ct. App. 1993). In a different context, our supreme court has said that "self-dealing by fiduciaries is permissible if approved by the court after a finding that there is an adequate reason for the transaction." *In re Guardianship & Conservatorship of Jordan*, 616 N.W.2d 553, 558 (Iowa 2000) (citing Iowa Code § 633.155). Eric has offered no reasons for the sale, other than arguing it was necessary to avoid future litigation and the price he offered to pay was fair, even though he failed to market the property. *Cf. Waterman*, 2011 WL 768753, at *8–9 (approving of administrators' self-dealing where the "estate did not have sufficient cash assets to pay the outstanding bills without selling the real property," there were no other interested purchasers, and the administrators did not make a profit from the purchase). We agree with the district court these are not adequate reasons and affirm its denial of Eric's petition for authority to sell real estate.

One final matter deserves our attention. In a one-sentence request, with no supporting attorney-fee affidavit or itemization, the objecting beneficiaries ask for an award of appellate attorney fees and costs under Iowa Code

section 633A.4507.  Because we lack enough information to determine whether this request should be granted under the general criteria laid out by the court in *Trimble*, 826 N.W.2d at 491, we remand this issue to the district court.  *See Duval v. Fox*, No. 13-0542, 2013 WL 6700352, at *3 (Iowa Ct. App. Dec. 18, 2013).

**IV.    Conclusion**

We affirm the district court's denial of Eric's petition for authority to sell real estate and remand with directions for the court to resolve the objecting beneficiaries' request for appellate attorney fees and costs under Iowa Code section 633A.4507.

**AFFIRMED AND REMANDED WITH DIRECTIONS.**