John E.F. SCHILDBERG III, William E. Schildberg, Gregory M. Schildberg, Theresa A. Estell, Madonna M. Weidman, and Cynthia L. Tauer, Appellants,

v.

Dennis SCHILDBERG, As Trustee of the E.F. Schildberg Irrevocable Trust, Appellee.

John SCHILDBERG, Plaintiff,

v.

Dennis SCHILDBERG, Individually and as President of E.F. Schildberg Construction Company, Schildberg Construction Company, Inc., Midwest Rock Products, Inc., Schildberg Stone Products Company, Schildberg's, Inc., Wee Dee, Inc., Sky Lanes Flying Services, Inc., and Other Schildberg Family-owned and Controlled Entities, Defendant.

No. 89–150.

Supreme Court of Iowa.

Sept. 19, 1990.

Rehearing Denied Oct. 18, 1990.

Ross H. Sidney, Robert Thomson, and Daniel J. Hanson of Grefe & Sidney, Des Moines, for appellants.

R. Jeffrey Lewis, William W. Graham and Steven P. DeVolder of Gamble, Riepe, Webster, Davis & Green, Des Moines, for appellee.

Considered by LARSON, P.J., and CARTER, LAVORATO, NEUMAN, and ANDREASEN, JJ.

LARSON, Justice.

The beneficiaries of a family trust requested that the court remove the trustee on grounds that he had failed to provide annual accounting to the beneficiaries and had created such a climate of acrimony between the trustee and beneficiaries that the effectiveness of the trust, and the trustee's ability to act on behalf of the beneficiaries, were seriously impaired. The district court denied the application to remove the trustee but did order that a cotrustee be appointed. The beneficiaries appealed, complaining that the court erred in refusing to remove the trustee. The trustee cross-appealed, claiming that the court erred in appointing a cotrustee. We affirm on the appeal and reverse on the cross-appeal.

E.F. Schildberg, the founder of a large rock quarry business and the settlor of the trust in question, had three children: John Schildberg, Dennis Schildberg, and Bernadette Youngblood. E.F. established this trust in 1982, following the death of his son, John. The trust is known as the 1982 E.F. Schildberg Irrevocable Trust, and its beneficiaries are the children of John Schildberg. John's children are John E.F. Schildberg III (referred to as John E.), Richard, Theresa, William, Gregory, Madonna, and Cynthia. All of John's children, except Richard, are plaintiffs in this action.

The corpus of the trust consists of voting stock in the E.F. Schildberg Construction Company, which is the holding company for several Schildberg family corporations. While the Schildberg corporations in total have several million dollars worth of assets and very substantial earnings, the trust involved here had fixed income of only $4500 per year, and its only assets are the voting shares in the holding company.

E.F. Schildberg named his son Dennis as the trustee and gave him broad powers on behalf of the trust. Testimony at trial established that it was E.F.'s plan to delegate through the trust the power in Dennis to select from the upcoming generations of Schildberg families the most qualified person to control the voting shares in the trust.

Prior to the death of E.F.'s son John, John and his brother Dennis owned equal amounts of voting preferred stock (15,000 shares) and voting common stock (450 shares) of Schildberg Construction Company, Inc. E.F. owned 35,000 shares of voting preferred stock and E.F.'s wife, Sylvia, owned 25,000 shares of voting preferred stock. E.F.'s and Sylvia's daughter, Bernadette, lives in Kansas City, Missouri, and has not been active in the family business. She is not a party to this case.

After the death of E.F.'s son John, and just prior to the death of E.F. himself, several intrafamily stock transfers were made. Following these transfers, Dennis Schildberg owned outright one-half of the voting stock, preferred and common, of Schildberg Construction Company, Inc. The other half of the voting stock was owned by John's estate (approximately twenty percent) and the trust (approximately thirty percent).

The Schildberg family had a long-standing corporate policy of separating equity value in the Schildberg companies from voting rights and decision-making powers in the companies. The concept was for the family to share in any financial successes and growth in the businesses while limiting the voting and decision making to a limited number of family members.

Although there had been friction between Dennis and John in the past, at the time of Dennis's appointment as trustee, his relationship with John's family was apparently good. Dennis seemed at that time to be the logical choice to be trustee. The evidence suggests that E.F. Schildberg in-

tended that Dennis be the trustee because he was the only one in the family thought to be capable of running the businesses. John E., the principal plaintiff, concedes that his grandfather did not think that John E. had sufficient experience at that time to fill the role.

According to Dennis Schildberg, the creation of the trust was part of a plan devised by E.F. to pass on the family companies to those members of the younger generations who evidenced the greatest managerial ability. Under the plan, the trustee would decide when someone in the group of John's children showed capability of management and decision making. Managerial control of the companies would then be passed through a transfer of the voting stock to such person or persons. No individual member of the younger Schildberg generations was identified at the time the trust was created as such a possibility, but it was hoped that one or more grandchildren would develop in time. The trust provides the trustee with broad power to distribute the corpus of the trust, *i.e.*, the voting stock, to any or all of the beneficiaries of the trust.

Dennis presented evidence to show that E.F. was philosophically and practically opposed to the diffusion of control and that he expected Dennis, as the trustee, to concentrate voting and decision making in the company as much as possible in the individuals Dennis felt showed the most management capability.

Until this suit was filed, the beneficiaries (except for John E.) did not know that the trust had been created. After the suit was filed, Dennis provided an accounting to the beneficiaries as required by the trust instrument. Each year the $4500 in annual income provided as fixed income for the trust had, by agreement of John E. and Dennis, been distributed to Richard Schildberg, one of the beneficiaries of the trust who was suffering from a disability.

After E.F.'s death, Dennis assumed control of the Schildberg family companies, and his relationship with John Schildberg's family deteriorated from that time. None of the beneficiaries, however, claim that Dennis has acted in such a way as to use the corporations for personal gain or that he has acted illegally.

A great deal of evidence in the case concerned Dennis's treatment of John E. In 1985, the quarries owned by Gendler Stone Products came up for sale, and it was generally agreed that the purchase of Gendler would be a good move. The Gendler company was purchased, adding a potentially profitable division and providing a means of expansion for Schildberg family members.

John E. assumed the position of president of the former Gendler company in January of 1986 and was advised that he would be given free rein to run the company. From the outset, however, John E. and Dennis had problems. About a month after the Gendler purchase, Dennis told Gregory and William that John E. was going to fail as president of the new operation. Dennis also told William's wife, Vicky, that John E. was going to fail and that Dennis was going to "screw him into the ground." Gregory also testified that Dennis on other occasions had stated that John E. would be a failure.

According to John E., at the end of the first year of operation, he had out performed projections by $200,000 at Gendler. The first half of 1987 was also successful. Dennis admitted that Gendler had been a financial success under the management of John E., but he claimed that John E. had failed to take meaningful control as manager of the division, neglected to adequately plan, and generally showed a lack of management ability. Dennis expressed the belief, as did others in the company, that the division could not continue as a successful operation under John E.'s management. Dennis relieved John E. of his duties as president in July of 1987, with no prior notice, and with no explanation other than that he had failed. John E. was reassigned to work as a salesman for the company at the same salary he had received as president.

Several witnesses testified that Gregory, not John E., has the greatest management potential of John's children. Long-term

employees of the company, at some employment risk to themselves, as well as Bernadette Youngblood, expressed this view. Dennis, who has worked with and around John E. for some twenty years, expressed the view that John E. is capable of being a good salesman but that his management capabilities and capacity for hard work are deficient.

There have also been disagreements concerning salary levels in the company. Basically, Dennis disagrees with the position of John E. and others that family members active in the company should be paid more than comparable employees because they are "Schildbergs." He has consistently applied this philosophy to both his and his brother's children.

The financial performance of the Schildberg businesses in recent years reflect effective management from a financial point of view. Net income before taxes has grown from $600,000 in 1980 to $2.7 million in 1987. Retained earnings increased from $5,705,455 in 1985 to $6,983,952 in 1986. As of December 31, 1987, the date of the last audited financial statement introduced at trial, shareholder equity in E.F. Schildberg Construction Company, on a consolidated basis, was $8,669,052, up from $7,390,545 for the same period in 1986.

The district court, after hearing the evidence, concluded that Dennis should not be removed as trustee. It did, however, order the appointment of Robert G. Roseland as cotrustee. On appeal, three issues are raised: (1) the scope of our review, (2) whether the court erred in refusing to remove Dennis as trustee, and (3) whether the court erred in appointing a cotrustee.

## I. Scope of Review.

This case was filed and tried in equity, and our review is therefore de novo. *In re Receivership of Mt. Pleasant Bank & Trust Co.*, 426 N.W.2d 126, 129 (Iowa 1988); *Harvey v. Leonard*, 268 N.W.2d 504, 512 (Iowa 1978); Iowa R.App.P. 4. The question of the removal of a trustee is a matter largely within the discretion of the district court. *Harvey*, 268 N.W.2d at 516; Restatement (Second) of Trusts § 107

comment *a;* Annotation, *Hostility Between Trustee and Beneficiary as Ground for Removal*, 63 A.L.R.2d 523, 531 (1959); 76 Am.Jur.2d *Trusts* § 131, at 373 (1975). Accordingly, we examine the record de novo to determine whether there was an abuse of discretion by the trial court in refusing to remove the trustee.

## II. The Removal Issue.

John E. was the original plaintiff in this suit but was later joined by his sisters and brothers. For simplicity, we will refer to the plaintiffs collectively as John E. John E. contends that the trial court actually found factual bases for his complaints regarding the trustee, yet refused to order his removal. He points to several grounds in claiming that the removal should be ordered.

He contends, first, that part III(C) of the trust instrument requires the trustee to make annual reports to the adult beneficiaries concerning payment of the trust income and argues that failure to account is a sufficient ground for removal. It is undisputed that Dennis did not provide any accounting to the beneficiaries until after this suit was filed. John E. also complains that Dennis should have consulted the beneficiaries of the trust in connection with its administration and that Dennis is in a position of conflict because of his personal interest in the Schildberg companies.

John E. complains that animosity has replaced trust in the relationship of these parties, resulting largely from Dennis's exercise of unbridled discretion in the running of the Schildberg companies. He also complains that Dennis has been abrasive in his treatment of John E., and other members of the John Schildberg family. He especially complains of his summary removal from management of the Gendler acquisition at the hands of Dennis.

As a result of Dennis's actions, John E. claims, the beneficiaries have lost trust in him, and they fear that the future relationships will be irreparably damaged. He argues that, where hostility has progressed to the point that it is disruptive of a mutual confidence which ought to exist with re-

spect to the businesses, the trustee may be removed even though there is no dishonesty.

 Iowa courts have the authority to remove and replace trustees when there is sufficient reason to do so to protect the best interests of the trust and its beneficiaries. *See Harvey*, 268 N.W.2d at 516; *In re Sexauer's Trust*, 287 N.W. 247, 249 (Iowa 1939) (not reported in state reports); *Keating v. Keating*, 182 Iowa 1056, 1069, 165 N.W. 74, 77 (1918). While courts have a wide latitude of discretion in such matters, they consistently decline to order removal of a trustee unless such action is clearly in the best interests of the trust and its beneficiaries. *Harvey*, 268 N.W.2d at 516. The power to remove a trustee should be used only when the objects of the trust are endangered. *See Waller v. Hosford*, 152 Iowa 176, 180, 130 N.W. 1093, 1094 (1911). It is clear from all of these authorities that a trustee does not merely serve at the pleasure of the trust beneficiaries. The key to removal is still the best interests of the operation of the trust.

 A court is less likely to remove a trustee named by a settlor, as opposed to one appointed by the court, Restatement (Second) of Trusts § 107 comment *f;* and the court will not ordinarily remove a trustee appointed by the settlor for grounds existing at the time of the trust's creation and known to the settlor. *In re Keyston's Estate*, 102 Cal.App.2d 223, 228, 227 P.2d 17, 21 (1951); *Jennings v. Murdock*, 220 Kan. 182, 211–12, 553 P.2d 846, 870 (1976); *In re Trusts Created by Hormel*, 282 Minn. 197, 205–06, 163 N.W.2d 844, 850 (1968).

Restatement (Second) of Trusts section 107 (1959) provides:

**A trustee can be removed**

**(a) by a proper court; or**

**(b) by the person, if any, who by the terms of the trust is authorized to remove the trustee.**

 A. *Trustee's duty to account.* Clearly, a trustee has the duty to provide an accounting to the beneficiaries. *Cox v. Cox*, 357 N.W.2d 304, 306 (Iowa 1984) (cit-

ing Restatement (Second) of Trusts § 172); *Harvey*, 268 N.W.2d at 516; *see also* Restatement § 107 comment *b.* In addition, the beneficiary is entitled to adequate information regarding the trust, *i.e.*, what the trust is and how the trustee has dealt with it. *Cox*, 357 N.W.2d at 306; Restatement § 173.

 Removal, however, is not justified when the overall performance of the trustee in the interest of the trust outweighs a breach of the trust agreement and the overall interests of the beneficiaries will be better served by having the trustee continue. *Harvey*, 268 N.W.2d at 516. Judicial removal of a trustee usually will not be grounded on a mere error of judgment or conduct even though there is a technical breach of the trust, if the trust estate does not suffer. 76 Am.Jur.2d *Trusts* § 130, at 370 (1975).

Here, it appears that Dennis's failure to report was partially at least the result of a family tradition to let the heads of families inform their members on financial matters. Dennis thought that John E., who knew about the trust and the details of the distribution of its income, would inform his brothers and sisters. Nevertheless, Dennis's omission to inform the plaintiffs and provide annual reports constituted a technical breach of the trust agreement. *See* Restatement (Second) of Trusts § 171 (trustee under duty to beneficiary not to delegate to others acts which trustee can reasonably be required to personally perform).

There is no evidence to indicate that the omission to report resulted from a motive on the part of Dennis to take advantage of the beneficiaries. Nor do we find evidence to suggest that the effectiveness of the trust has been impaired, despite this technical violation, or that the intent of the settlor has been thwarted. Dennis assured the district court that timely reports would be made in the future. We agree with the district court that failure to report in this case is not a sufficient ground for removal.

 B. *The alleged conflict of interest.* A trustee owes a duty of loyalty to

the trust and to its beneficiaries and must act in good faith in all actions affecting the trust. Restatement (Second) of Trusts section 170 (1959) provides:

(1) **The trustee is under a duty to the beneficiary to administer the trust solely in the interest of the beneficiary.**

Comment *t* to this section provides:

*t. Terms of the trust. By the terms of the trust the trustee may be permitted* to sell trust property to himself individually, or as trustee to purchase property from himself individually, or to lend to himself money held by him in trust, or otherwise *to deal with the trust property on his own account. The trustee violates his duty to the beneficiary, however, if he acts in bad faith, no matter how broad may be the provisions of the terms of the trust in conferring power upon him to deal with the trust property on his own account.*

(Emphasis added.)

■■ John E. claims that Dennis used powers of the trust to further his own interests, including promotion of his own son in the business. Even so, there is no evidence to indicate this was done in bad faith, and the terms of the trust provide such discretion to Dennis. In addition, where the settlor knows of a potential conflict of a trustee, yet appoints him, the conflict will ordinarily not be a ground for removal. Restatement (Second) of Trusts § 107 comment *f; Childs v. National Bank of Austin,* 658 F.2d 487, 490 (7th Cir.1981); *Estate of Utterback,* 521 A.2d 1184, 1190 (Me.1987); *Keyston's Estate,* 102 Cal.App.2d at 228, 227 P.2d at 21.

The facts in this case are similar to those in *Keyston's Estate.* In *Keyston's Estate,* the settlor placed voting stock of a family corporation in trust with one brother for the benefit of the trustee's nephew with the result that the trustee gained control of the corporation. The nephew sought removal of the trustee claiming in substance that the interests of the trustee as officer and director conflicted with his interests as trustee. The court refused to remove the trustee noting that trustees named by a settlor will not ordinarily be removed on a

ground existing and known to the settlor at the time of appointment.

E.F. Schildberg knew his family and the Schildberg business, yet he placed Dennis in control of both. His appointment of Dennis is consistent with his philosophy of concentrating power in as few individuals as possible for the efficient management of the business. We believe that he contemplated just what has occurred: that Dennis would control the companies and the voting stock in the trust. Under these circumstances, we do not believe there is such a conflict as to require removal of the trustee.

■■ C. *The hostility issue.* In *Keating,* 182 Iowa at 1074, 165 N.W. at 79, we said that,

where the duties of the trustee are such as to bring the parties into personal touch or intercourse with each other, and the relations between them have become so hostile and acrimonious that the trustee's continuance in office would be detrimental to the trust and destructive of the mutual confidence which ought to exist with respect to the business, the court is at liberty to remove the trustee, even though he be not charged with any dishonesty, and, if necessary, appoint another, against whom no such objection exists.

On the other hand, hostility which is not justified by any act or conduct of the trustee, or which results from the acts or conduct of the beneficiary, has been held not to be sufficient ground for removal. *In re Sexauer's Trust,* 287 N.W. at 249 (not reported in state reports).

One treatise has set out the following rule:

Disagreement and unpleasant personal relations between the trustee and beneficiaries are not usually enough to warrant removal. The beneficiary often conceives that he could manage the trust better than the trustee, resents failure to follow his advice, is dissatisfied with returns, thinks that the trustee is too conservative in his investment policies, and otherwise finds fault with the trustee.

Thus friction develops. But the settlor has entrusted the management to the trustee not to the beneficiary. The very fact that he created a trust showed that he did not want the beneficiary to be the controlling factor in the management of the property. However, in some instances the hostile relations between the trustee and beneficiary have gone so far that the court feels a new trustee should be appointed. Where the malicious or vindictive conduct of the trustee is the cause of disagreement and bitterness, removal is apt to be decreed.

G. Bogert, *Law of Trust and Trustees* § 160, at 577 (5th ed. 1973).

The Restatement (Second) of Trusts section 107 (1959) provides that a trustee can be removed by a proper court upon certain grounds. Comment *c* to this section provides this with respect to one ground for removal:

> *Friction.* Mere friction between the trustee and the beneficiary is not a sufficient ground for removing the trustee unless such friction interferes with the proper administration of the trust.

E.F. Schildberg, with an eye towards concentration of management power, selected Dennis to be the trustee and provided him with discretion in allowing participation in the management decisions. He did so, we believe, with knowledge of potential friction between Dennis and John's family because of the lengthy period of friction between Dennis and John before John's death. While there is present friction among the family members, it has not seriously interfered with the effectiveness of the trust. We conclude, as did the district court, that sufficient grounds for removal were not established.

### III. The Appointment of a Cotrustee.

 Although none of the parties requested that a cotrustee be appointed, the court ordered the parties to submit prospective names to be considered for that position. The court did in fact appoint a cotrustee, Robert Roseland, who was suggested by the trust beneficiaries. The trustee complains that this was error.

 The plaintiffs argue that the trustee failed to properly preserve this issue for appeal. The trustee responds that this was relief not requested by any of the parties and was simply a part of the court's final judgment in the case. Under these circumstances, he argues, it was not necessary for him to specifically bring the issue to the attention of the court. It was raised by the court on its own initiative. We agree with the trustee that the issue is properly before us.

The Restatement (Second) of Trusts section 108 provides:

> **If a trust is created and there is no trustee or if the trustee, or one of several trustees, ceases for any reason to be trustee, a new trustee can be appointed**
>
> **(a) by a proper court; or**
>
> **(b) by the person, if any, who by the terms of the trust is authorized to appoint a trustee.**

Comment *e* to this provision provides:

> *Appointment of additional trustees.* The court can appoint additional trustees, and not merely fill vacancies by appointment, when the circumstances are such that the appointment of such additional trustees would be conducive to the better administration of the trust.

The court apparently relied on comment *e* in making the appointment of the additional trustee.

 The cases interpreting section 108 comment *e* suggest that the discretion conferred upon the court must be exercised only in rare circumstances. The policy reason is that the identity and number of the trustees is a central part of the structure of the trust and a key indicator of the intent of the settlor. *See Moody v. Haas*, 493 S.W.2d 555, 567 (Tex.Civ.App.1973). In *Moody*, the court held that there must be evidence of "facts exceptional in character" that authorizes the court to "disregard the will of the [settlor]," and that, "[a]bsent a showing of such facts[,] a court does not have the discretion to deviate from the administrative plan provided by the settlors." *Id.*

In *Estate of Crozer*, 493 Pa. 352, 356, 426 A.2d 585, 587 (1981), the Pennsylvania Supreme Court held that a stringent standard must be applied by appellate courts when reviewing a lower court's appointment of an additional trustee made pursuant to comment *e*. It held that the district court abused its discretion in appointing an additional trustee when there was no vacancy and that a comment *e* standard would permit appointment of a new trustee only if the administration of the trust is in some respect inadequate, or reasonably likely to become so. *Id.*

In the present case, we find no exceptional facts which require the appointment of an additional trustee. While appointment of a person to referee the disagreement among these parties might be helpful in establishing better relationships among them, we do not believe that such an appointment would be conducive to better administration of the trust. In fact, just the opposite result is suggested. Based on the parties' past performance, the original trustee and any cotrustee appointed at the suggestion of the trust beneficiaries are likely to disagree on key voting issues. They could very well reach a voting impasse, neutralizing the effectiveness of the voting trust and thwarting the intent of the settlor to provide for streamlined administration of the businesses through centralized authority.

Applying the test of the authorities set out above, we find no evidence of such exceptional nature as to disregard the will of the settlor in connection with the number and identity of the trustees. We conclude that the appointment of a cotrustee was beyond the court's discretion.

We affirm the trial court's order refusing removal of the trustee but reverse as to that part of the order which appointed a cotrustee.

Costs are taxed to the appellants.

AFFIRMED ON APPEAL; REVERSED ON CROSS–APPEAL.