In the Matter of the ESTATE OF
Dorothy RAGAN, Deceased.

Donna M. TIFFANY, Appellee,

v.

Jon V. TIFFANY, Brian F. Tiffany,
Vaughan R. Tiffany, and Gordon
D. Tiffany, Appellants.

No. 94–1643.

Supreme Court of Iowa.

Dec. 20, 1995.

Rehearing Denied Jan. 11, 1996.

Marlyn S. Jensen, Osceola, for appellants.

John C. Powell of Shirley, Powell & Finneseth, Perry, for appellee.

Considered by McGIVERIN, C.J., and LARSON, NEUMAN, ANDREASEN, and TERNUS, JJ.

LARSON, Justice.

The district court found that the primary and contingent trustees named in a decedent's will were "unsuitable" to act as trustees, Iowa Code § 633.63 (1993), and appointed a substitute trustee. We affirm.

## I. *The Facts.*

The will of Dorothy Ragan devised outright one-half of her real estate to her daughter Lois Lynch. The other half she placed in a spendthrift trust for another daughter, Donna Tiffany. The original will, dated July 20, 1976, named the Citizens' National Bank of Boone as trustee. The decedent later executed two codicils. The first was on March 22, 1990, and appointed John F. Tiffany (the trust beneficiary's husband) and Rhonda Tiffany (John's daughter-in-law) as trustees. A second codicil of October 11, 1991, deleted Rhonda Tiffany and named John Tiffany as the sole trustee. The decedent named Brian Tiffany as an alternate in the event John was unable to serve.

By the time of the decedent's death in January 1992, John Tiffany was a resident of Wyoming. On Dorothy's death, John and his son, Brian, a resident of Iowa, petitioned for their appointment as cotrustees. *See* Iowa Code § 633.64(1) (requiring resident trustee to serve with nonresident). Donna Tiffany, the trust beneficiary, resisted their appointment. At the time of the hearing, a dissolution action was pending between John and Donna, and presumably that is now complete.

The court (Judge Gary L. McMinimee presiding) agreed with the trust beneficiary that John and Brian were unsuitable to be trustees. John and Brian appealed, together with other residual beneficiaries under the trust.

(We will refer to the appellants collectively as "John and Brian.") The court of appeals reversed and remanded because of a failure to notify all of the interested parties of the pending application. *In re Estate of Ragan,* 526 N.W.2d 581 (Iowa App.1995) (Table). A second hearing was held before Judge Joel E. Swanson. The court again found the petitioners to be unqualified. This appeal followed.

## II. *The Law.*

◼ There is no statutory requirement for court appointment of testamentary trustees. However, the probate court has the authority to determine whether a trustee is "qualified." Iowa Code section 633.63 sets out the qualifications for resident fiduciaries, including trustees. It provides in relevant part that:

> 1. Any natural person of full age, who is a resident of this state, is qualified to serve as a fiduciary, except the following:
>
> *a.* One who is a mental retardate, mentally ill, a chronic alcoholic, or a spendthrift.
>
> *b.* Any other person whom the court determines to be *unsuitable.*

(Emphasis added.) The court applied section 633.63 and 633.64 (concerning nonresident fiduciaries) and found John and Brian Tiffany "unsuitable" to serve as trustees.

John and Brian argue that their authority does not flow from any order by the district court but from the will itself and that the court may consider their qualifications only in the context of an action for their removal. Donna (the trust beneficiary) counters that anything passing to the trustee must pass subject to court approval of the trustees' qualifications.

◼ A court's power to remove an acting trustee is closely circumscribed, and removal will be ordered only when the objects of the trust are seen to be jeopardized. *Schildberg v. Schildberg,* 461 N.W.2d 186, 191 (Iowa 1990). Donna argues, however, that this is not a matter of removal but one of a failure to qualify.

◼ Iowa Code section 633.66 clearly demonstrates that there is a difference between

an appointed fiduciary who fails to qualify and one who is removed.

> When any fiduciary *fails to qualify*, dies, is *removed* by the court, or resigns, and such resignation is accepted by the court, the court may, and if the fiduciary were the sole or last surviving fiduciary, and the administration has not been completed, the court shall appoint another fiduciary in the former's place.

(Emphasis added.)

If, as John and Brian contend, a trustee nominated in a will instantly becomes a qualified trustee on the death of the testator, the qualification requirements of section 633.63 and the "fails to qualify" language of section 633.66 become surplusage. *See* Iowa Code § 4.4(2) (1993) (presumption that all of statute is intended to be effective).

■ Under our view of section 633.63, these trustees need not be removed if they have failed to qualify. This construction is consistent with the general rule that "[t]he creator of a trust has the right to appoint his own trustees *as long as such trustees possess the proper legal qualifications....*" 90 C.J.S. *Trusts* § 212, at 141 (1955) (emphasis added).

John and Brian argue that this principle is inapplicable because, when a decedent dies, title to the trust corpus must vest immediately in someone, and the only person to whom the property could pass is the trustee named in the will. They base this argument on the old property law principle that property must be "seised" at all times. The case they cite, however, does not support their claim. That case, *DeLong v. Scott*, 217 N.W.2d 635 (Iowa 1974), held that while title to real property passed instantly to the devisee the property was nevertheless in the possession of the personal representative of the estate and subject to sale or other disposition. *Id.* at 637. Iowa Code section 633.350 provides:

> [W]hen a person dies, the title to the person's property, real and personal, passes to the person to whom it is devised by the person's last will, or, in the absence of such disposition, to the persons who succeed to the estate as provided in this Code, but all of the property shall be subject to the possession of the personal representative as provided in section 633.351 and to the control of the court for the purposes of administration, sale, *or other disposition under the provisions of law....*

(Emphasis added.)

One of these "provisions of law," we believe, that will affect passage of title to a named fiduciary is that the fiduciary be one "qualified" by court order. We therefore reject the legal arguments raised in challenging the court's order and turn to a discussion of whether these nominees are "qualified."

### III. *The Qualification Issue.*

■ The appointment of trustees is a matter for the probate court, sitting in equity. Iowa Code § 633.33. Our review is therefore de novo. The Code fails to define "unsuitable." However, in *Quincy Trust Co. v. Taylor*, 317 Mass. 195, 57 N.E.2d 573 (1944), the Massachusetts Supreme Court defined the term in a similar context:

> The statutory word "unsuitable" gives wide discretion to a probate judge. Past maladministration of a comparable trust ... warrants a finding that an executor or administrator is unsuitable. Such a finding may also be based upon the existence of an interest in conflict with his duty, or a mental attitude towards his duty or towards some person interested in the estate that creates reasonable doubt whether the executor or administrator will act honorably, intelligently, efficiently, promptly, fairly and dispassionately in his trust. It may also be based upon any other ground for believing that his continuance in office will be likely to render the execution of the will or the administration of the estate difficult, ineffective or unduly protracted. Actual dereliction in duty need not be shown.

The district court found John to be unsuitable, largely because of his past dealings with the decedent, and it found Brian to be unsuitable because of his lack of business experience and his propensity to be controlled by John.

■ The decedent, Dorothy Ragan, executed a power of attorney in 1987, naming

John Tiffany, this potential trustee, as her attorney in fact. John Tiffany paid some of the ward's routine bills but wrote several checks to himself or to entities in which he had an interest without explaining his purposes.

On November 2, 1991, he wrote a check on Dorothy's account in the amount of $400 payable to himself. He signed the check as attorney in fact for Dorothy Ragan and endorsed it in his own name. He claims that the $400 represented labor that he had performed for Dorothy Ragan two years earlier. Another check was written in November 1991 payable to "First Farlin Company" for $500. He wrote a check in December 1991 to First Farlin Company for $500, and in the same month wrote a check to Hardin Township Company. John had no recollection as to the reason for any of these checks. The evidence showed that he had an interest in both companies, although John was evasive as to the nature and extent of his interest.

The executor of the estate of Dorothy Ragan testified that John was the tenant on eighty acres of real estate owned by the decedent and that he owed $6000 in past rent. John denied that he was responsible for the cash rent and claimed that Hardin Township Company was the real tenant and that he, John, was merely acting as its agent.

John was the conservator for his daughter, Pollyann Marie Tiffany, who obtained a settlement in a lawsuit. She received $19,000, and this was placed in a conservatorship under John's control as conservator. As of the time of the hearing, $10,500 of the conservatorship funds were unaccounted for, and apparently John gave his daughter a note in that amount.

The district court concluded as to John that

> [his] attitude, demeanor, evasiveness and total lack of understanding of the duties of a fiduciary present an individual who has no desire to learn, understand or follow rules, regulations and guidelines pursuant to [Iowa Code] chapter 633.... His previous self-dealing as a fiduciary and one acting as an attorney in fact are proof positive of his "unsuitability."

 The evidence showed that Brian Tiffany had no previous experience in money management and is dominated and controlled by his father. We agree with the district court that it had the power to determine the suitability of these nominees without going through removal proceedings, and we conclude that neither of these nominees is suitable.

Several other issues have been raised to challenge the court's order, but we find no merit in any of them. We affirm the order of the district court.

**AFFIRMED.**