**IN THE COURT OF APPEALS OF IOWA**

No. 14-1847
Filed February 24, 2016

**IN THE MATTER OF THE
GUARDIANSHIP OF BRYCE NOBILING,**

**LUCILLE NOBILING,**
　　　　Petitioner-Appellant.

**PAULA LAMBERTZ, GLENN NOBILING, and BARB DAVID,**
　　　　Respondents-Appellees.
_____

　　　　Appeal from the Iowa District Court for Carroll County, Gary L. McMinimee, Judge.


　　　　A mother appeals from the district court's order removing her as co-guardian of her adult son. **AFFIRMED.**


　　　　Christopher R. Kemp of Kemp & Sease, Des Moines, for appellant.

　　　　Gina C. Badding of Neu, Minnich, Comito & Neu, P.C., and Christopher Polking of Polking Law Office, Carroll, for appellees.

　　　　Joel C. Baxter of Wild, Baxter, & Sand, P.C., Guthrie Center, attorney and guardian ad litem for ward.


　　　　Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**DANILSON, Chief Judge.**

Lucille Nobiling appeals from the district court order removing her as co-guardian for her adult son, Bryce. Lucille maintains the district court's determination that the four co-guardians could not work together was correct, but she maintains the court's remedy was wrong. Rather than removing her, she maintains the court should have removed the three other co-guardians, Bryce's siblings. In the alternative, she maintains the court should have removed all four co-guardians and appointed a neutral party.

Because we find that Lucille has failed to perform her duties as a guardian, the district court did not abuse its discretion in removing her as one of Bryce's co-guardians. Additionally, we cannot disagree with the other three individuals continuing in a fiduciary capacity on behalf of Bryce, and we affirm the district court's order.

## I. Background Facts and Proceedings.

Bryce Nobiling is a fifty-four-year-old man with Down syndrome. His mother, Lucille, and three of his siblings—Paula Lambertz, Barbara Davis, and Glenn Nobiling—have been appointed as Bryce's co-guardians. At the time the parties initiated this matter, he had been cared for by Lucille all of his life. Bryce receives social security disability benefits of approximately $900 per month through his deceased father.

On March 28, 2014, Lucille filed a petition to remove Paula and Barbara as co-guardians. Lucille maintained that Paula and Barbara were "actively seeking to have Bryce placed in a group home facility," which was "not in Bryce's

best interests." Lucille maintained that she was still capable of caring for Bryce and it was in his best interests that she continued to do so.

In response, Paula and Barbara filed a petition on April 22, 2014, in which they asked the court to deny Lucille's motion to have them removed and to remove Lucille as co-guardian of Bryce because she was eighty-nine years old and was "increasingly confused, depressed, anxious, and otherwise failing in her mental capacity and ability to care for the ward at home." Additionally, she had "recently become resistant to allowing recommend[ed] services for the ward such as Supported Community Living Services." They also asked the court to "approve of a transitional plan that results in a change of placement for" Bryce.

On June 30, 2014, Lucille amended her petition to ask the court to also remove Glenn as co-guardian. In addition, she requested that her brother David Lutwitze be named first alternate guardian for Bryce, or, in the alternative, her son Mark Nobiling.

The court appointed a guardian ad litem for Bryce and ordered a third-party evaluation.

On August 6, 2014, the siblings filed a "statement of authorities" maintaining that the court had the discretion to remove Lucille because she had failed to perform her duties as a guardian pursuant to Iowa Code section 633.635(1)(a), (c), and (e) (2013). The same day, the district court held a hearing on the parties' petitions.

At the hearing, the siblings admitted into evidence a document from a meeting that took place on February 25, 2014, that all four parties had signed. The document outlined the agreed upon care plan for Bryce in 2014. The

document listed measurable goals or objectives that Bryce would learn, including to "report emergencies and stay on the line using a 911 phone," "do his own laundry," and "wash dishes using a dishwasher." Additionally, as a "transition plan" the document stated, "New Hope will assist Bryce with transitioning into life in a group home." On cross-examination, Lucille was asked if she remembered attending the meeting and signing the document, to which she replied she remembered attending but she "didn't know I was signing. I just signed it because I thought [Glenn] okayed it." Later, Lucille was asked if she agreed at the February 25 meeting to a plan to help Bryce adjust to eventually moving to a group home. She responded:

> It's like the one that where I went to the meeting, I didn't know—I expected my person [Glenn] to help me out and guide me a bit but it didn't happen that way. So that why it's all haywire. I don't know that much about the law. I don't know any more than— any more about any of it. That's why I depended upon him.

During the same line of questioning, Lucille admitted she "should have read" the document. When asked if she needed help with the documents, Lucille responded, "Well, to read through all that and decide, yes."

Later on cross-examination, Lucille was asked if she was aware that her son Mark, whom she had proposed as a successor guardian, had sexually abused his sister Paula when Paula was a child. Lucille answered that she was aware of it. She denied having any knowledge that Mark had sexually abused his brother Glenn. Both Paula and Glenn testified that they have been sexually abused by Mark when they were children. Mark testified as well—he admitted sexually abusing Glenn "several times," but he denied abusing Paula. Mark made similar statements to the options counselor who conducted "an evaluation

of the current services and situation" of Bryce and filed a report in response to the court's order for a third-party evaluation.

Lori Stark, a service coordinator for Bryce, also testified at the hearing. She testified that she was asked to provide respite services to Bryce, or, in other words, to "find a provider that will go in and take the consumer [Bryce] out into the community, just spend time with them, just to give the parent or whoever is the guardian a break from being a parent." The service provider set up weekly outings with Bryce and provided service for four weeks before Lucille cancelled the service May 6, 2014. Lori testified that when Lucille called to cancel the services, she could hear a male's voice in the background instructing her on what to say. No respite service was provided until the day before the hearing, August 5, 2014, when it was reinitiated. Additionally, Lucille was questioned about failure to follow through with the goals and objectives listed for Bryce. Lucille admitted she did not leave dirty dishes or dirty laundry for services providers to work on with Bryce. She also testified that the Lifeline service—which had been provided to help Bryce in case of an emergency—was cancelled after she forgot to call and check the device several months in a row.

The district court filed an order on September 22, 2014. The court removed Lucille as a guardian because it did "not believe that Lucille is capable of serving as a sole guardian and [did] not consider either Mark or [David] to be a suitable person to serve with her." Patricia, Glenn, and Barb were also removed as a part of the "group" but then reappointed successor co-guardians.

Lucille appeals.

**II. Standard of Review.**

Because an action to remove a guardian constitutes "other matters triable in probate" and is equitable in nature, our review is de novo. Iowa Code § 633.33; Iowa R. App. P. 6.907. However, we review the district court's construction, interpretation, and application of a statute for corrections of errors at law. *Horizon Homes of Davenport v. Nunn*, 684 N.W.2d 221, 224 (Iowa 2004) (interpretation); *In re Detention of Swanson*, 668 N.W.2d 570, 575 (Iowa 2003) (construction); *State v. McCoy*, 618 N.W.2d 324, 325 (Iowa 2000) (interpretation and application).

**III. Discussion.**

Lucille maintains the district court's determination that the four co-guardians could not work together was correct, but she maintains the court's remedy was wrong. Rather than removing her, she asserts the court should have removed the siblings and allowed her to remain as Bryce's guardian. In the alternative, she maintains the court should have removed all four co-guardians and appointed a neutral party.

Here, the district court found "nothing that any co-guardian has done or failed to do that would justify the removal of any one of the guardians." The court then proceeded to remove Lucille due to the co-guardian's inability to agree on the best course of action regarding Bryce's living arrangements. While the district court has great discretion in the removal of guardians, there must be some cause for removal. *See In re Husmann's Guardianship*, 64 N.W.2d 252, 260 (Iowa 1954) ("True it is that the court has a duty to observe the doings of its fiduciaries and to inspect their reports; but before removing a guardian or

charging him with derelictions it should be certain cause therefor sufficiently appears."); *see also In re Cannon's Guardianship*, 1 N.W.2d 217, 219–20 (Iowa 1941) ("It has been our general holding that the removal of guardians rests in the sound discretion of the court and we will not interfere, where there is some basis for the order."). Inability or unwillingness to agree is not a cause for removal.[1] Iowa Code section 633.76 provides a remedy in such a situation:

> Where there are two or more fiduciaries, they shall all concur in the exercise of the powers conferred upon them, unless the instrument creating the estate provides to the contrary. In the event that the fiduciaries cannot concur upon the exercise of any power, any one of the fiduciaries may apply to the court for directions, and the court shall make such orders as it may deem to be to the best interests of the estate.

Iowa Code section 633.65 controls the removal of a guardian or fiduciary.

It provides:

> When any fiduciary is, or becomes, disqualified under sections 633.63 and 633.64, has mismanaged the estate, *failed to perform any duty imposed by law*, or by any lawful order of court, or ceases to be a resident of the state, then the court may remove the fiduciary. The court may upon its own motion, and shall upon the filing of a verified petition by any person interested in the estate, including a surety on the fiduciary's bond, order the fiduciary to appear and show cause why the fiduciary should not be removed. Any such petition shall specify the grounds of complaint. The

---

[1] In *Schildberg v. Schildberg*, 461 N.W.2d 186, 192 (Iowa 1990), our supreme court considered whether hostility between the trustee and beneficiaries was sufficient for the removal of the trustee pursuant to Iowa Code section 633.65. The court stated, "[H]ostility which is not justified by any act or conduct of the trustee, or which results from the acts or conduct of the beneficiary, has been held not to be sufficient ground for removal." *Schildberg*, 461 N.W.2d at 192. Additionally, the court cited the Restatement (Second) of Trusts § 107 (1959), which provides, "Mere friction between the trustee and the beneficiary is not a sufficient ground for removing the trustee unless such friction interferes with the proper administration of the trust." *Id.* at 193. The court ultimately concluded that the hostility between the two parties was not "sufficient grounds for removal." *Id.* We acknowledge that the present facts involve co-guardians rather than a trustee and beneficiaries, but Iowa Code section 633.633 provides, "The provisions of this probate code applicable to all fiduciaries shall govern the appointment, qualification, oath and bond of guardians and conservators . . . ."

removal of a fiduciary after letters are duly issued to the fiduciary shall not invalidate the fiduciary's official acts performed prior to removal.

Iowa Code § 633.65 (emphasis added). At trial, the siblings maintained Lucille should be removed as a guardian because she had violated her duties and responsibilities as a guardian, enumerated in Iowa Code section 633.635(1)(a), (c), and (e).[2] We agree.

We acknowledge that Lucille has been Bryce's caregiver his entire life and that she knows him better than anyone else does. However, Lucille admitted that she, at least recently, has had trouble reading documents and then making the necessary decisions for Bryce's ongoing care. According to her own testimony, she signed the document outlining Bryce's care plan for the year without reading or understanding it. Although she originally agreed to the respite services meant to get Bryce out into the community more, Lucille cancelled the service for approximately three months during the pendency of the proceedings. We are concerned by the service coordinator's testimony that it sounded like Lucille was

---

[2] Iowa Code section 633.635(1)(a), (c), and (e) provide:
　　　　1. Based upon the evidence produced at the hearing, the court may grant a guardian the following powers and duties which may be exercised without prior court approval:
　　　　　　a. Providing for the care, comfort and maintenance of the ward, including the appropriate training and education to maximize the ward's potential.
　　　　　　. . . .
　　　　　　c. Assisting the ward in developing maximum self-reliance and independence.
　　　　　　. . . .
　　　　　　e. Ensuring the ward receives professional care, counseling, treatment, or services as needed. If necessitated by the physical or mental disability of the ward, the provision of professional care, counseling, treatment, or services limited to the provision of routine physical and dental examinations and procedures under anesthesia is included, if the anesthesia is provided within the scope of the health care practitioner's scope of practice.

cancelling the service as a result of a third party's coaching or instruction. Contrary to Lucille's assertion, the parental preference given to parents in the appointment of guardians for a minor does not apply to an adult ward. *See* Iowa Code § 633.559 ("[T]he parents of a *minor child*, or either of them, if qualified and suitable, shall be preferred over all others for appointment as guardian." (emphasis added)); *see also In re Guardianship of M.E.B.*, No. 06-0583, 2007 WL 1345895, at *5 (Iowa Ct. App. May 9, 2007) ("We conclude the text of section 633.559 is plain and its meaning unambiguously clear, and thus we need not, nor can we, search for meaning beyond its express terms. The legislature's intent that the parental preference be applied only to minors is clear from the language of the statute. If the legislature intended a parental preference to be applied in selecting a guardian for an adult ward it easily could have expressly provided for such a preference. It has chosen not to do so.").

Lucille maintains that even if she violated her duties and could have been removed as Bryce's guardian, the court abused its discretion by removing her because it is not in Bryce's best interests. To support her assertion, she maintains that the district court improperly considered allegations of past sexual abuse committed by Mark against his siblings, and she has successor guardians in place if and when necessary.[3]

The district court could properly consider the allegations of past sexual abuse by Mark against his siblings. Lucille asked the court to appoint Mark as an "alternate" or successor guardian, which put his suitability for such a role at

---

[3] Lucille also maintains the siblings are "obsessed with punishing" her. It is unclear how this assertion is related to Bryce's best interests, and, upon our de novo review, we find the assertion is unsupported by the record.

issue. *See* Iowa Code § 633.63(1)(b) ("Any natural person of full age, who is resident of this state, is qualified to serve as a fiduciary, except any of the following: Any other person whom the court determines to be unsuitable."). Although the code does not define "unsuitable," our supreme court relied on a Massachusetts Supreme Court decision defining the term:

> The statutory word "unsuitable" gives wide discretion to a probate judge. Past maladministration of a comparable trust . . . warrants a finding that an executor or administrator is unsuitable. Such a finding may also be based upon the existence of an interest in conflict with his duty, or a mental attitude towards his duty or towards some person interested in the estate that creates *reasonable doubt whether the executor or administrator will act honorably*, *intelligently*, *efficiently*, *promptly*, *fairly and dispassionately* in his trust. It may also be based upon any other ground for believing that his continuance in office will be likely to render the execution of the will or the administration of the estate difficult, ineffective or unduly protracted. Actual dereliction in duty need not be shown.

*In re Estate of Ragan*, 541 N.W.2d 859, 861 (Iowa 1995) (emphasis added) (quoting *Quincy Trust Co. v. Taylor*, 57 N.E.2d 573, 574 (Mass. 1944)). Additionally, although Lucille attempts to characterize the allegations as baseless and unfounded, Mark admitted both at the hearing and to the third-party evaluator that he sexually abused Glenn. It was not improper for the district court to consider Mark's past actions toward vulnerable siblings when the court was asked to decide whether he was a suitable choice as a guardian or as it may show Lucille's poor judgment as it relates to Bryce's best interests. Moreover, we agree with the court's determination that neither Mark nor Lucille's half-brother, who was seventy years old at the time of the proceedings and living in California, were suitable persons to serve as Bryce's guardian.

Finally, Lucille maintains that even if she was properly removed as a co-guardian, the siblings should also have been removed and a neutral party appointed instead.

In fact, in a somewhat unusual process, the other three co-guardians were also removed, but by the court's order, the three were subsequently appointed as successor co-guardians. In essence, the district concluded the four co-guardians could not function together as a group because there was too much hostility between some of them, they were unable to reach a consensus for the ward's best interests, and there was a lack of communication between them. The record supports these conclusions. Lucille was also the likely one not to continue her duties, notwithstanding her position as Bryce's parent. Whatever may have been the cause, Lucille has not shown the same attention to her duties recently nor exercised the same good judgment she once did. Because Iowa Code section 633.76 requires co-fiduciaries to "concur in the exercise of the powers conferred upon them" unless an instrument states otherwise and the four co-guardians could not function as a group, we agree with Lucille's removal.

Although there was probably not a need to remove the other three co-guardians, we cannot disagree with the other three continuing in a fiduciary capacity on behalf of Bryce. Accordingly, upon our de novo review, the relief requested by Lucille must be denied. We affirm.

**AFFIRMED.**