# IN THE COURT OF APPEALS OF IOWA

No. 20-0393
Filed May 12, 2021

IN THE MATTER OF THE TRUST UNDER THE WILL OF
WILLIAM B. KRON SR.,

STEVEN ALAN KRON,
　　　　Appellant/Cross-Appellee,

ESTATE OF DOUGLAS KRON,
　　　　Appellee/Cross-Appellant.
_____

Appeal from the Iowa District Court for Johnson County, Kevin McKeever,

Judge.


The trustee of a testamentary trust appeals the district court's construction

of a will, and a beneficiary cross-appeals from the denial of a motion to remove the

trustee. **AFFIRMED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**


Daniel P. Kresowik of Brick Gentry P.C., West Des Moines, for appellant.

Joseph T. Moreland of Hayek, Brown, Moreland & Smith, L.L.P., Iowa City,

for appellee.

Jay H. Honohan of Honohan, Epley, Braddock & Brenneman, Iowa City,

guardian ad litem.


Heard by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**VAITHESWARAN, Presiding Judge.**

The trustee of a testamentary trust appeals the district court's construction of a will. A beneficiary cross-appeals from the denial of a motion to remove the trustee.

## I.    *Background Facts and Proceedings*

William B. Kron Sr. and his wife, Evelyna B. Kron, each owned an undivided one-half interest in a 130-acre farm and a 3.8-acre homestead. The couple had three sons, Steven, Doug, and Bill Jr., and a daughter who died without children before the events triggering this action.

William Sr. executed a will in which he created a trust to receive his portion of the real estate. He designated Steven as the trustee and gave him the first option to purchase the real estate. Steven was also designated executor of the will.

William Sr. died in 2007. Two years later, Steven filed an application to establish a residuary trust under the will. The district court granted the application and named Steven trustee. In time, Evelyna took issue with Steven's actions as trustee and applied to have him removed. Steven agreed to the removal, an entity was substituted as trustee, that entity was allowed to resign, and Steven was reappointed trustee.

Meanwhile, Evelyna died. In the intervening years, Doug and Bill Jr. also passed away.

Fast forward to 2017. Steven, individually and as trustee of William Sr.'s trust; Debra Kron,[1] executor of Bill Jr.'s estate; and Alex and Nicholas Kron,[2] individually and as executors of Evelyna's and Doug's estates; executed a mediation agreement that authorized Steven to purchase the real estate in the trust for a specified sum. The agreement contained the following paragraph:

> Upon the sale of the real estate, the payment of the mortgage, and the payment to Doug's Estate, the remaining proceeds from the real estate sale will be distributed equally between the Trust and Evelyna's Estate. *The Trust will, as soon as practicable, then terminate, and any assets of the Trust will be equally divided between Steven, Doug's Estate, and Bill Jr.'s Estate.* Evelyna's Estate will also be closed as soon as practicable, after the distribution of the proceeds from the sale of the real estate. *All parties of this agreement will take the position for any challenges raised in the future, that Bill Sr.'s Trust defines "family members" as being the three (3) sons, Steven, Doug, and Bill Jr., and as such, upon the termination of the Trust, the assets of the Trust should be equally divided between Steven, Doug, and Bill Jr.*

(Emphasis added.)

Steven purchased the real estate through a company he owned with his wife. He then filed a petition for construction of the will. In his petition, he conceded

> said beneficiaries have agreed that, as originally requested by Evelyna B. Kron, the Will be interpreted such that the three sons of William B. Kron, Sr. and Evelyna B. Kron, namely William B. Kron, Jr., Steven Alan Kron and Douglas Lynn Kron are the "Family Members" and that income or principal of the Trust would be distributed equally to the three sons. All of said sons survived Evelyna B. Kron.

Doug's estate filed a response asserting that the mediation agreement confirmed the trust's "defin[ition] [of] 'family members' as being the three (3) sons, Steven,

---

[1] Debra is Bill Jr.'s surviving spouse.
[2] Alex and Nicholas are Doug's children. Alex, Nicholas, and their brother, Will, were the beneficiaries of Doug's estate.

Doug, and Bill Jr.," and "[t]he mediation agreement was cited in Steven's petition for construction of will." Doug's estate pointed out, "Steven is now taking a contrary position to the mediation agreement which he signed individually and as Trustee, in that he says now there may be other family members affected by this agreement."

The district court appointed a guardian ad litem "to represent the interests of any incapacitated, unborn, or unascertained persons, or any persons whose identity or address may be unknown, but who may have an interest in this Trust." The guardian ad litem filed a report opining that William Sr.'s intent was confirmed in the mediation agreement "and the rights of minors and unborn beneficiaries are protected under the laws of inheritance as William B. Kron intended." The guardian ad litem provided the following recommendation: "The Court should terminate the trust and order the Trustee to distribute the Trust assets one third to Steven and one third each to the Estates of William Jr. and Douglas."

Following an evidentiary hearing, the district court approved the mediation agreement, ordered the trust closed, and ordered distributions "made to the respective beneficiaries and estates per stirpes." The court also ordered Steven to repay funds taken from the trust for his own use.

Steven filed a motion to amend or enlarge the findings and conclusions to clarify use of the term "per stirpes." *See* Iowa R. Civ. P. 1.904(2). The guardian ad litem countered with a motion to have Steven removed as trustee. The district court ruled as follows: "**Beneficiaries**[:] The Court did not intend any ambiguity in its usage of the term 'per stirpes.' As a point of clarification, the Court's intent was for the distribution to occur in a manner consistent with the mediation agreement."

The court denied the guardian ad litem's removal motion. Steven appealed, and Doug's estate cross-appealed.

## II.    *Trust Beneficiaries*

Steven contends the mediation agreement on which the district court relied is "ambiguous," rendering the court's determination of the beneficiaries "necessarily ambiguous." He asserts the trust assets should have been distributed "one-third to Bill's issue, per stirpes, one-third to [himself, individually], and one-third to Doug's issue, per stirpes."

"The polestar of our analysis is the rule that the testator's . . . intent must prevail." *In re Tr. of Killian*, 459 N.W.2d 497, 499 (Iowa 1990). "That intent is to be determined from the language of the instrument, the scheme of distribution, and the facts and circumstances surrounding the document's execution." *Id.* "Courts should resort to technical rules of construction only if ambiguous language in the will or trust creates uncertainty about the maker's intent." *Id.*; *see also In re Steinberg Fam. Living Tr.*, 894 N.W.2d 463, 468 (Iowa 2017).

There is no ambiguity here. William Sr.'s will stated he "ha[d] three children," identified the children by name, and said "[a]ny references in [the] will to 'my sons' or 'my children' are to said persons." The mediation agreement executed by Steven and the executors of the other two sons' estates stated in no uncertain terms:

> All parties of this agreement will take the position for any challenges raised in the future, that Bill Sr.'s Trust defines "family members" as being the three (3) sons, Steven, Doug, and Bill Jr., and as such, upon the termination of the Trust, the assets of the Trust should be equally divided between Steven, Doug, and Bill Jr.

True, the paragraph also stated "any assets of the Trust will be equally divided between Steven, Doug's Estate, and Bill Jr.'s Estate." But the sentence was simply a recognition of the reality that Doug and Bill Jr. were no longer alive at the time of the agreement's execution.

As for Steven's assertion that all the grandchildren did not weigh in on the mediation agreement, precluding enforcement of its terms, their input was unnecessary because the three sons of William Sr. were the only beneficiaries under the testamentary-trust provision. In any event, the record reflects the grandchildren were notified and had the opportunity to respond but most chose not to do so.

Steven next suggests a reference in the will to one of the grandsons lends ambiguity on the question of the true beneficiaries. But that grandson was not included in the class of beneficiaries; he was named as next in line to purchase the farm if Steven chose not to exercise his purchase option. The grandson's inclusion in the will did not generate any ambiguity as to the identity of the beneficiaries.

We are left with Steven's contention that the trust proceeds had to be distributed "per stirpes." In his view, "even if the term 'family members' were defined as Steve, Bill Jr., and Doug, the Trust beneficiaries would still be Steve, Bill Jr.'s children, and Doug's children." Steven cites two statutory provisions in support of his assertion—Iowa Code sections 633A.1103 and 663.273.

Section 633A.1103, titled "per stirpes rule of descent," states, "Unless the trust instrument provides otherwise, all gifts to multigeneration classes shall be by stirpes." "'Per stirpes' is defined as '[p]roportionally divided between beneficiaries

according to their deceased ancestor's share.'" *Larson v. Sec. Nat'l Bank of Sioux City*, No. 10-0704, 2010 WL 4484001, at *2 (Iowa Ct. App. Nov. 10, 2010) (alteration in original) (quoting *Per Stirpes*, *Black's Law Dictionary* (7th ed. 1999). The phrase uses a generational approach, "where those of more remote kinship to decedent take by right of representation." *Gilbert v. Wenzel*, 78 N.W.2d 793, 794 (Iowa 1956). "If a named beneficiary precedes you in death, then the benefits would pass on to that person's children in equal parts. Spouses are generally not part of a per stirpes distribution." *What's the Difference between Per Capita and Per Stirpes Beneficiary Designations?*, https://www.mastrylaw.com/whats-the-difference-between-per-capita-and-per-stirpes-beneficiary-designations/ (last visited April 20, 2021); *see also* L.S. Tellier, Annotation, *Taking Per Stirpes or Per Capita Under Will*, 13 A.L.R.2d 1023 (1950). "[T]he phrase . . . directs how a bequest should be distributed among a designated class, but it does not designate such a class." *Larson*, 2010 WL 4484001, at *2.

Here, the designated class in William Sr.'s will was not multigenerational; the class was William Sr.'s three sons. That fact renders section 633A.1103 inapplicable.

Iowa Code section 633.273(1) states, "If a devisee dies before the testator, leaving issue who survive the testator, the devisee's issue who survive the testator shall inherit the property devised to the devisee per stirpes, unless from the terms of the will, the intent is clear and explicit to the contrary." Steven conceded in his petition to construe the will that all three sons survived their father. Accordingly, section 633.273(1) is inapplicable. As Doug's estate notes:

Because Steve, Doug, and Bill Jr. all survived their father, their interest, a remainder interest, became indefeasibly vested *at the time of William Sr.'s death*. The fact that Doug and Bill Jr. subsequently died before the Farm was sold is of no relevance. Because their interests are vested, they are devisable. Accordingly, Steve, Doug's Estate, and Bill Jr.'s Estate are entitled to each receive one third of the proceeds from the sale of the Farm and the Executors for Doug's and Bill Jr.'s Estate should distribute such proceeds according to the wills of Doug and Bill Jr., respectively.

In sum, William Sr.'s will and the mediation agreement unambiguously named Steven, Doug, and Bill Jr. as the beneficiaries of the trust. As Doug's estate points out, "reviewing the plain language of the Will and the overall distribution scheme, the natural and only reasonable interpretation is that William Sr. intended to give his wife a life estate under the Trust and then give his three sons equal share of the same." The guardian ad litem similarly stated, "William Sr.'s intent was clear and is demonstrated by the language of his will." At oral argument, he reiterated that the will "was very specific and it only applied to his three sons." On our de novo review, we agree with these assertions. We affirm the district court's resolution of Steven's petition to construe William Sr.'s will.

### III.    *Removal of Steven as Trustee*

On cross-appeal, Doug's estate challenges the district court's failure to remove Steven as trustee "for material breach of fiduciary duties."

Iowa courts have the authority to remove and replace trustees when there is sufficient reason to do so to protect the best interests of the trust and its beneficiaries. While courts have a wide latitude of discretion in such matters, they consistently decline to order removal of a trustee unless such action is clearly in the best interests of the trust and its beneficiaries. The power to remove a trustee should be used only when the objects of the trust are endangered.

*Schildberg v. Schildberg*, 461 N.W.2d 186, 191 (Iowa 1990) (internal citations omitted). "A court is less likely to remove a trustee named by a settlor, as opposed

to one appointed by the court." *Id.*; *see also* Iowa Code §§ 633A.4107 (setting forth factors for removal of trustee, including "a material breach of the trust"), 633A.4202 (setting forth duties of trustees and stating "[a]ny transaction involving the trust which is affected by a material conflict between the trustee's fiduciary and personal interests is voidable by a beneficiary affected by the transaction" except under enumerated circumstances).

Doug's estate describes the evidence of Steven's "bad faith and self-dealing" as "overwhelming," citing his use of trust funds to pay expenses unrelated to the beneficiaries. Doug's estate also points to the fact that Steven "carr[ied] out the portion of the [mediation] agreement to his benefit, including becoming the title holder of the Farm, receiving payment from Evelyna's estate, and receiving his final trustee fees" all while he "maintain[ed] that the will is ambiguous and the mediation agreement is unenforceable."

The district court characterized Steven's acts as "lapses in judgment." We are less sanguine. Steven indisputably used trust funds for his own benefit. He lent himself a large sum of money and paid for real-estate related expenses that, by his own admission, "benefitted the Kron farm" purchased by his company. While he pointed to the other beneficiaries' right to enjoy the farm, we are not persuaded that intangible right authorized his expenditure of trust funds for items such as field tiling, an overhead door, and real-estate taxes.

That said, the district court rectified Steven's abuses by ordering him to "reimburse the trust" for the remaining balance on his loans as well as "expenses . . . of $63,897.91." The court also noted that, if Steven were removed, the matter would be "prolong[ed]." We agree removal of Steven as trustee would have

delayed closure of the trust, in contravention of William Sr.'s expressed desire. We conclude the district court did not abuse its broad discretion in allowing Steven to remain trustee. *Cf. Schildberg*, 461 N.W.2d at 191 (noting removal must be in "the best interests of the operation of the trust"). We affirm the denial of the motion to remove the trustee.

## IV. Appellate Attorney Fees

Doug's estate seeks an order requiring Steven to pay $5000 toward its appellate attorney fees. Iowa Code section 633A.4507 authorizes fees as follows: "In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney fees, to any party, *to be paid by another party* or from the trust that is the subject of the controversy." (Emphasis added.) In determining whether an award of attorney fees is equitable under section 633A.4507, we consider the following "general criteria":

> (a) reasonableness of the parties' claims, contentions, or defenses; (b) unnecessarily prolonging litigation; (c) relative ability to bear the financial burden; (d) result obtained by the litigation and prevailing party concepts; and (e) whether a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons in the bringing or conduct of the litigation.

*In re Tr. No. T-1 of Trimble*, 826 N.W.2d 474, 491 (Iowa 2013) (citation omitted).

Doug's estate is correct that Steven delayed distribution of trust assets and "chang[ed] positions on testator intent." And, as noted, Steven used trust assets for his own benefit. At the same time, the district court resolved his misuse of trust assets by ordering those assets returned to the trust. With Steven ordered to make the trust whole, we conclude he should not be personally liable for the payment of

appellate attorney fees incurred by Doug's estate.  *See id.* at 493 (declining to hold trustee personally liable for payment of other parties' attorney fees).  Because Doug's estate prevailed on the beneficiary issue, we order the trust to pay $5000 to Doug's estate to cover its appellate attorney-fee obligation.

**AFFIRMED ON APPEAL; AFFIRMED ON CROSS-APPEAL.**

Greer, J., concurs; Schumacher, J. concurs in part and dissents in part.

**SCHUMACHER, Judge** (concurring in part and dissenting in part.)

I concur with the majority as to all issues affirmed on appeal with the exception of the issue raised on cross-appeal concerning the removal of Steven as trustee. The evidence of Steven's use of trust funds to pay expenses unrelated to the beneficiaries and self-dealing rises to a material breach. Iowa Code section 633A.4202(1) requires a trustee to "administer the trust solely in the interest of the beneficiaries, and [to] act with due regard to their respective interests." On cross-appeal, the Estate of Douglas Lynn Kron summarized Steven's fiduciary breaches as follows:

> The evidence of Steve's bad faith and self-dealing was overwhelming: Despite the global resolution reached in the Mediation Agreement in January 2017, the Trust remains open to this date. While maintaining that the Will is ambiguous and the Mediation Agreement unenforceable, Steve proceeded to carry out the portion of the Agreement to his benefit, including becoming the title holder of the Farm, receiving payment from Evelyna's estate, and receiving his final trustee fees. While maintaining that the Trust must remain open, he continued to expend trust funds to pay $18,211.08 in personal attorney's fees, to pay $35,854.50 to Customer Care Lawn Service LLC, a company whose registered agent was his son and whose registered address was his personal residence, and to expend Trust assets for the general improvement of the Farm, which he had agreed to purchase and subsequently did. Finally, while no distribution has ever been made since the Trust was established in 2009, Steve took out a total of $250,000.00 from the Trust in 2018, almost the entirety of the available Trust funds, to finance his purchase of the Farm, without giving prior notice to either the remaining beneficiaries or the court.
>
> The district court's September 2019 decision agreed that Steve engaged in serious self-dealings, in the form of converting Trust assets into loans to himself and by incurring a multitude of expenses that only benefited himself. With such findings in the backdrop, the court inexplicably denied the request for Trustee removal, stating that Steve's "lapses in judgment" were not sufficiently serious and that they "were not the result of any malice, recklessness or ill intent."
>
> The court's decision in asking the Trustee to repay the Trust cannot be squared with its simultaneous finding that the Trustee's

"lapses in judgment" lack severity. Its imposition of "malice" as an additional requirement also finds no support in Iowa law.

In short, while the district court ordinarily has wide discretion over the removal of trustees, it abused such power on this occasion. The consequences of the court's decision are significant. Without granting the requested removal, the court essentially required Steve to collect misappropriated funds from himself as soon as practicable, and distribute such funds to the other beneficiaries which, unsurprisingly, did not occur.

This dissent acknowledges the majority's concerns regarding delays in the closure of the trust due to the appointment of a new trustee. However, any delay in the closure would not outweigh the need to ensure that the trust assets are protected for all beneficiaries. As the Iowa Supreme Court has explained,

Iowa courts have the authority to remove and replace trustees when there is sufficient reason to do so to protect the best interests of the trust and its beneficiaries. While courts have a wide latitude of discretion in such matters, they consistently decline to order removal of a trustee unless such action is clearly in the best interests of the trust and its beneficiaries. The power to remove a trustee should be used only when the objects of the trust are endangered. It is clear from all of these authorities that a trustee does not merely serve at the pleasure of the trust beneficiaries. The key to removal is still the best interests of the operation of the trust.

*Schildberg v. Schildberg*, 461 N.W.2d 186, 191 (Iowa 1990) (internal citations omitted).

Steven's self-dealing demonstrates a complete lack of concern for beneficiaries other than himself. The best interests of the trust and other beneficiaries cannot be safeguarded by leaving Steven in charge of the assets. As such, a new trustee should be appointed.