# IN THE COURT OF APPEALS OF IOWA

No. 23-0314
Filed June 5, 2024

**IN THE MATTER OF THE JUDITH C. ROLENC REVOCABLE TRUST,**

**SCOTT S. ROLENC,**
        Beneficiary-Appellant.
_____

        Appeal from the Iowa District Court for Montgomery County, Craig M. Dreismeier, Judge.


        Scott Rolenc appeals the district court's order recognizing a successor trustee of his mother's trust. **AFFIRMED.**


        Keith A. Harvat of Houghton Bradford Whitted PC, LLO, Omaha, Nebraska, for appellant.

        Ryan P. Tunink, Adam Feeney, Theodore T. Appel, and John L.C. Pietig (until withdrawal) of Lamson Dugan & Murray, LLP, West Des Moines, for appellee.

        Joseph Hrvol of Joseph J. Hrvol, P.C., Council Bluffs, for appellee Stanford Rolenc.

        Marcus Gross of Salvo, Deren, Schenck, Gross, Swain & Argotsinger, P.C., Harlan, for appellee Judith Rolenc.


        Heard by Bower, C.J., and Badding and Langholz, JJ.

**BOWER, Chief Judge.**

Scott Rolenc appeals the district court's order recognizing his brother, Steve Rolenc, as successor trustee of their mother's trust. Upon review, we affirm the court's order.

**I.     *Background Facts and Proceedings***

This family and its various entities and conflicts have mired our district and appellate courts for years. This particular case (TRPR0147372) involves the district court's order recognizing a successor trustee of Judith (Judy) Rolenc's trust. In reaching its decision, the district court took judicial notice of two other case files (TRPR013986 and GCPR014017), which we have also considered as relevant to this proceeding.

In 1996, Judy entered into a Revocable Trust Agreement, which declared Judy as the settlor and trustee of her private trust. The trust identified Ronald Rolenc as Judy's husband and named their three children as equal beneficiaries upon the death of Judy and Ronald: Scott Rolenc, Steven (Steve) Rolenc, and Stanford (Stan) Rolenc. The trust designated Ronald successor trustee. Stan was designated as Ronald's successor trustee; Steve was designated as Stan's successor trustee; and "a national or state bank selected by a majority . . . of the . . . income beneficiaries" of the trust was designated as Steve's successor trustee. Judy executed an amendment to the trust in 2008, which did not amend the successor-trustee provisions.

Ronald died in 2016. Upon his death, Judy was appointed trustee of Ronald's trust. In June 2017, Judy filed a First Amended and Restated Revocable Trust Agreement, which designated Stan and Steve as "successor co-trustees." If

either Stan or Steve was unable to serve as trustee, then "the remaining designated successor co-trustee" was designated to "serve as sole successor trustee." If neither Stan nor Steve was able to serve as trustee, then "a bank or trust company authorized under state or federal law to conduct trust business, selected by a majority . . . of the . . . income beneficiaries" was designated successor trustee. In December 2017, Judy filed a Second Amended and Restated Revocable Trust Agreement that did not amend those successor-trustee provisions.

In January 2020, upon the parties' agreement that Judy was "not able to act as successor trustee" of Ronald's trust, the court entered an order appointing Steve successor trustee of Ronald's trust, despite the terms of Ronald's trust designating Scott as successor trustee. Specifically, the court found "[g]iven the various lawsuits filed by Scott involving the trust, his mother, and/or his brother [Stan], this court finds a conflict of interest exists. Allowing Scott to serve as successor trustee is not in the best interest of the trust or the beneficiaries." Instead, the court appointed Steve, who "ha[d] not been involved in any litigation to date and . . . was named as a successor trustee in the trust document." Scott appealed the court's order but later dismissed his appeal.

In October 2020, the district court determined Judy was not competent.[1] Stan and Steve began acting as successor co-trustees under the terms of Judy's

---

[1] In GCPR014017, the court ordered Steve and Stan to serve as Judy's co-guardians and Steve to serve as Judy's conservator. Notably, in reaching its decision, the court denied a request by Mysti, Scott's adult daughter, to serve in both capacities, stating in part:

trust. When the trust became too "cash poor" to pay for litigation expenses it was incurring, Steve and Stan determined "the best thing" for Judy would be to liquidate some of the trust's farmland because the "farm ground was worth more than anything."[2] To ensure the property was sold at fair market value, they decided to "t[ake] it to auction." Scott was the highest bidder. The brothers signed a contract for Scott to purchase the farmland, but Scott refused to close on the transaction, essentially "making his own injunction on th[e] property" "because th[e] court would not grant him an injunction to stop [Steve and Stan's] sale."

In March 2022, Steve and Stan initiated this proceeding by filing a petition for limited trust supervision, requesting the district court "recognize [them] as the present co-trustees of the Second Amended and Restated Judith C. Rolenc Revocable Trust." Scott filed an answer, disputing Steve and Stan were "validly-nominated successor co-trustees" and disputing Judy's Second Amended and

---

The obvious concern is that she is Scott's daughter and it is feared that Scott would really be the individual "calling the shots" and making the decisions rather than Mysti. Having viewed Exhibit 19, this court tends to share those concerns. Mysti testified that the purpose of the recordings on Exhibit 19 was to try and preserve memories for future years. As already noted, several recorded videos seemed less focused on preserving memories than trying to persuade Judith to take some action favorable to Scott and have that "affirmation" recorded. Mysti was present during all of these conversations and this court shares somewhat of the concern that she wouldn't be able to tell her dad no.

The court described Exhibit 19 as a series of audio and video recordings by Mysti involving Judy and, at times, Scott. As the district court observed, "Although a few of the audio recordings seemed to be more focused on Judith and how she was doing, several of the video recordings featured Scott speaking with Judith concerning the business and attempting to affirm from her that she wanted him to be in charge of the business and look after her . . . ."

[2] Specifically, Steve and Stan sought to sell approximately seventy acres of farmland co-owned by Judy's trust and Ronald's trust.

5

Restated trust was "valid and enforceable" because it "was the result of undue influence, fraud, duress, or mistake." Scott claimed "based upon the relationship and dealings between these three brothers, th[e] court should appoint a bank or trust company authorized under state or federal law to conduct trust business as the successor trustee."

The matter came before the court for a hearing in December 2022. The following month, the court entered an order recognizing Steve as successor trustee of Judy's revocable trust. In reaching this decision, the court found "it would be inappropriate for Stan to serve in this role" due to his involvement in litigation involving other family members or business entities. Accordingly, the court found Stan's "situation now is no different than Scott's when this court determined it was not appropriate for Scott to serve as successor trustee of Ronald's trust." However, the court determined "[t]here is no conflict precluding [Steve] from continuing to serve as successor trustee." Scott appeals.

## II. Jurisdiction

Before turning to the merits of the case, we must address a jurisdictional question. A party may appeal as a matter of right from "[a]ll final orders and judgments of the district court." Iowa R. App. P. 6.103(1). A party generally cannot appeal non-final judgments. Here, both parties maintain the district court's order is not a final judgment. However, "[a]ll orders and decrees of the court sitting in probate are final decrees as to the parties having notice and those who have appeared without notice." Iowa Code § 633.36 (2022); *accord In re Est. of Clegg*, No. 22-1953, 2024 WL 2042153, at *2 (Iowa Ct. App. May 8, 2024); *see Strawn v. Strawn*, No. 13-1433, 2014 WL 4629877, at *2 (Iowa Ct. App. Sept. 17, 2014)

(holding section 633.36 applies to orders in revocable trust proceedings). We proceed to the merits of Scott's appeal.

### III. Scope and Standard of Review

Generally, proceedings concerning the internal affairs of a trust are tried in equity. *In re Tr. No. T-1 of Trimble*, 826 N.W.2d 474, 482 (Iowa 2013); *see also* Iowa Code § 633.33 (listing matters to be tried as law actions and noting "all other matters triable in probate shall be tried by the probate court as a proceeding in equity"). We review such matters de novo. *In re Est. of Waterman*, 847 N.W.2d 560, 565 (Iowa 2014). "We review the district court's interpretation of statutory provisions for errors at law." *In re Est. of Melby*, 841 N.W.2d 867, 871 (Iowa 2014).

This appeal concerns the district court's recognition of Steve as successor trustee, as designated in Judy's trust. The court also declined to recognize Stan as successor co-trustee, despite being designated in Judy's trust. Similar matters are reviewed for abuse of discretion. *See Schildberg v. Schildberg*, 461 N.W.2d 186, 191 (Iowa 1990) ("Iowa courts have the authority to remove and replace trustees when there is sufficient reason to do so to protect the best interests of the trust and its beneficiaries. While courts have a wide latitude of discretion in such matters, they consistently decline to order removal of a trustee unless such action is clearly in the best interests of the trust and its beneficiaries." (internal citations omitted)); *Kessler v. Kessler*, No. 18-1506, 2019 WL 2151737, at *1 (Iowa Ct. App. May 15, 2019) ("The trial court has broad discretion in deciding whether to remove an executor and trustee." (quoting *In re Est. of Randeris*, 523 N.W.2d 600, 605–06 (Iowa Ct. App. 1994))); *In re Tr. of Kron*, No. 20-0393, 2021

WL 1907150, at *5 (Iowa Ct. App. May 12, 2021) ("We conclude the district court did not abuse its broad discretion in allowing Steven to remain trustee."); *In re McKernan Tr.*, No. 07-2122, 2009 WL 1886057, at *3 (Iowa Ct. App. July 2, 2009) ("The standard for removal of trustees is the best interests of the operation of the trust."); 13 Julie L. Pulkrabek & Gary J. Schmidt, *Iowa Practice Series: Probate* § 12.25 (West 2023) ("[T]rustees are subject to removal by court, and whether a trustee shall be removed and another appointed in his stead is largely within the court's discretion, the test always being the best interest of the beneficiaries." (internal footnote omitted)). We will "examine the record de novo to determine whether an abuse of discretion can be found." *See Kessler*, 2019 WL 2151737, at *1 (quoting *Randeris*, 523 N.W.2d at 606).

### IV. Analysis – Best Interests of the Operation of the Trust

Scott challenges the district court's order recognizing Steve as successor trustee of Judy's revocable trust. Scott claims "[i]t is clearly in the best interests of the trust and its beneficiaries to appoint a bank, corporate fiduciary, or independent third party as successor trustee of the trust."

At the outset, we agree with Scott this action "is a little more complicated" than a "simpl[e]" appointment of a successor trustee to Judy's trust. Although the district court's order was framed as an order "appointing successor trustee,"[3] upon the court's previous determinations in January 2020 that Judy was "not able to act as successor trustee" of Ronald's trust and even more definitively in October 2020

---

[3] The court acknowledged "[p]rior to their petition for appointment, Stan and Steve have been acting as successor co-trustees under the terms of [Judy's] trust as amended. They are asking this court to continue to allow them to serve in this role."

that Judy's "present physical and emotional health preclude her from making any decisions concerning her . . . finances," Steve and Stan were appointed as successor co-trustees of Judy's trust "ipso facto." *See In re Meyers Fam. Revocable Tr.*, No. 22-0866, 2023 WL 3335996, at *2 (Iowa Ct. App. May 10, 2023) (noting co-trustees were appointed by the settlor's trust upon her death); *In re Strasser's Est.*, 262 N.W. 137, 140 (Iowa 1935) (observing "when a bank or trust company acting as trustee becomes insolvent and . . . ceases to function, [then] fiduciary positions held by it become vacant ipso facto"). Indeed, in their petition initiating this proceeding, Steve and Stan requested the court "recognize [them] as the present co-trustees" of Judy's trust. As the district court noted, "This court has previously determined that Judy is not competent." *See In re John F. Dybvik Revocable Tr.*, No. 20-0200, 2020 WL 7018923, at *4 (Iowa Ct. App. Nov. 30, 2020) ("We are bound by these findings from the earlier decision.").

Judy's Second Amended and Restated Revocable Trust Agreement provides in relevant part[4]:

> Section 3. Death or Incapacity of Trustee.
> Upon the death of the designated Trustee or in the event one (1) physician states in writing that, in such physician's opinion, said Trustee is unable to properly administer the Trust, then the Successor Co-Trustees shall be STANFORD R. ROLENC and STEVEN R. ROLENC; provided, should either STANFORD R. ROLENC or STEVEN R. ROLENC be unable or unwilling to serve as Successor Co-Trustee, the remaining designated Successor Co-Trustee shall serve as sole Successor Trustee; provided, further,

---

[4] Insofar as Scott challenges "the competency of or what was known by" Judy in 2017 when she executed her amended and restated trust, Scott did not preserve this claim for review because it was neither raised before nor decided by the district court. *See In re Est. of Laube*, No. 20-1399, 2022 WL 108937, at *5 (Iowa Ct. App. Jan. 12, 2022) ("Error preservation generally involves two steps: (1) properly raising the issue before the district court and (2) obtaining a ruling." (citing *Meier v. Senecaut*, 641 N.W.2d 532, 539 (Iowa 2002))).

should neither STANFORD R. ROLENC or STEVEN R. ROLENC be able or willing to serve as Successor Co-Trustee, then the Successor Trustee shall be a bank or trust company authorized under state or federal law to conduct trust business, selected by a majority in number of the permissible income beneficiaries of this trust who have attained twenty-one (21) years of age. The determination of such majority shall be made according to the number of such beneficiaries without regard to the amount or percentage of income from the trust which any of them may then be entitled to receive. The Successor Trustee shall have all the powers and authority, discretionary or otherwise, herein conferred on the designated Trustee; however, the Successor Trustee shall not be liable or responsible in any way for the acts or defaults of any predecessor Trustee, or for any losses or expenses resulting from or occasioned by anything done or neglected to be done by any predecessor Trustee, but the Successor Trustee shall be liable only for the acts or defaults of such successor Trustee in respect to property actually received by such successor Trustee.

Accordingly, at the time it was determined Judy was not competent, and therefore "unable to properly administer the trust," Steve and Stan became successor co-trustees.

Iowa courts have the authority to remove and replace trustees when there is sufficient reason to do so to protect the best interests of the trust and its beneficiaries. While courts have a wide latitude of discretion in such matters, they consistently decline to order removal of a trustee unless such action is clearly in the best interests of the trust and its beneficiaries. The power to remove a trustee should be used only when the objects of the trust are endangered.

*Schildberg*, 461 N.W.2d at 191 (internal citations omitted). "A court is less likely to remove a trustee named by a settlor, as opposed to one appointed by the court." *Id.* The court "may remove a trustee, or order other appropriate relief if any of the following occurs":

a. If the trustee has committed a material breach of the trust.
b. If the trustee is unfit to administer the trust.
c. If hostility or lack of cooperation among cotrustees impairs the administration of the trust.
d. If the trustee's investment performance is consistently and substantially substandard.

e. If the trustee's compensation is excessive under the circumstances.

f. If the trustee merges with another institution or the location or place of administration of the trust changes.

g. For other good cause shown.

Iowa Code § 633A.4107(2).

Scott claims Steve should not be successor trustee for "the same reasons" Stan was not appointed successor co-trustee. But to fully understand why Stan was not appointed co-trustee in this case, we need to look back to the court's January 2020 decision of the same question relating to Ronald's trust (in which the court denied Scott's request for appointment as successor trustee and instead appointed Steve). There, the court stated:

> Typically, this Court would follow the terms of a trust document concerning the appointment of trustees and/or successor trustees. The trust document was created on December 21, 1996. The language in the trust is clear as to whom Ronald Rolenc wanted to serve as trustee and successor trustees. The beneficiaries of the trust include Judy, Stan, Scott and Steven. Ronald Rolenc died on November 19, 2016. The lawsuit filed in Montgomery County case CVCV021650 commenced on September 1, 2017. The lawsuit filed in Montgomery County case CVCV021654 commenced on December 11, 2017. Although a decision has been rendered in CVCV021654, the same is presently on appeal. It was Scott who initiated both of these lawsuits.
>
> As noted in Scott's brief, Iowa courts have the authority to remove and replace a trustee when there is sufficient reason to do so to protect the best interest of the trust and its beneficiaries. Given the various lawsuits filed by Scott involving the trust, his mother, and/or his brother, this Court finds a conflict of interest exists. Allowing Scott to serve as successor trustee is not in the best interest of the trust or the beneficiaries. Perhaps once the litigation has ended, it would be appropriate to revisit the same. In the meantime, Steven will serve as successor trustee. He has not been involved in any litigation to date and as noted, was named as a successor trustee in the trust document.

Fast forward a few years, during which the court was privy to Stan's involvement in some of the family's litigation. The court denied Stan's request for appointment as successor co-trustee of Judy's trust, stating:

> Although not identical, the arguments presented for each party are similar to the same considered in the appointment of a successor trustee for Ronald's trust. Steve and Stan are now asserting the argument made by Scott as to honoring the desires of their mother to appoint them as co-trustees and Scott is arguing his brothers should not serve due to conflicts of interest and/or failure to properly administer Ronald's trust. In considering the appointment of successor trustees, Judy's intent as to who the successor trustee(s) should be is clearly indicated throughout Exhibits 1A through 4A. Typically, this court would follow the terms of a trust document concerning the appointment of a trustee and/or successor trustee. This court will look at Stan and Steve independently of one another in determining if either or both should continue serving in this role.
> Concerning Stan, this court agrees with Scott that it would be inappropriate for Stan to serve in this role. Scott is accurate in his argument that this court has previously commented in other cases as to Stan's suspect actions and questionable dealings related to Red Oak Diesel Clinic. Further, many of the lawsuits filed by Scott are related to the conduct of Stan. Stan certainly did not initiate that litigation, but he is intimately involved in it. His situation now is no different than Scott's when this court determined it was not appropriate for Scott to serve as successor trustee of Ronald's trust. As such, Stan will not serve as a successor trustee.

Obviously, Scott does not challenge the court's ruling with respect to Stan. He claims, however, because Steve and Stan "acted together as 'successor co-trustees'" in attempting to enforce the auction of the farmland, "Steve has the same conflict as Stan." Both Steve and Stan testified the first action they took acting as co-trustees of Judy's trust was "[t]he farmland sale." Interestingly, the reason Steve and Stan determined the trust needed to sell farmland was to produce "cash"

to pay for litigation fees, which were spurred in large part by Scott.[5]  As Stan testified, "If Mom were not being sued right now, she would have positive cash flow; but because of litigation she has negative cash flow."  Steve elaborated:

> [T]he Trust is pretty cash poor, and so we—the farm market I think we talked about before, the farm market is really high priced and stuff right now—so we went through and was trying to sell the property at auction figuring that would be the best way of guaranteeing—because of our litigation, instead of selling privately—best thing to make sure it was fair market value, so we took it to auction.  Again, that was under financial advisors and attorneys and such.  That wasn't just a decision.  It was something we came to the conclusion was the best thing for Mom.
> . . . .
> . . .  The general consensus was that farm ground was worth more than anything.  It was—seemed like try to liquidate for purposes for Mom's benefit.  It goes in her Trust so not like it evaporates, not like it's gone.

We note Steve and Stan had nothing to gain by depleting trust assets, as they are the only named beneficiaries of Judy's trust.[6]

---

[5] We concur with Steve's testimony that Scott "has so many lawsuits out there it's hard to keep track of them."  In this vein, we reject Scott's contention "[t]he friction [between Steve, Stan, and Scott] has certainly interfered with the proper administration of the trust."  *See Schildberg*, 461 N.W.2d at 193 ("Mere friction between the trustee and the beneficiary is not a sufficient ground for removing the trustee unless such friction interferes with the proper administration of the trust." (quoting Restatement (Second) of Trusts § 107 (1959))).  The friction in this family—which has existed for years prior to Scott's complaints about the administration of Judy's trust—has primarily been at the hands of Scott.  As the district court observed, "I know the relationship with the family.  I've heard enough of this family I could probably tell you a lot of it myself."  The court did not abuse its discretion in finding Scott has failed to prove friction between the parties sufficient for removal of Steve as trustee.  *See In re Tr. of Weitzel*, No. 09-1660, 2010 WL 2757212, at *6 (Iowa Ct. App. July 14, 2010) ("The burden to prove conduct sufficient for removal of the trustee is upon the person seeking removal.").

[6] Judy's Second Amended and Restated Revocable Trust Agreement states, "For all purposes of this instrument, the Settlor's son Scott S. Rolenc and his descendants are specifically excluded from any distribution from this Trust, it being the intention that neither Scott S. Rolenc nor his descendants benefit from this Trust."

Scott further challenges the court's recognition of Steve as successor trustee, claiming Steve had not provided prudent accountings of Ronald's trust and had comingled "conservator funds with the trust funds." Notably, Scott offers no evidence, other than his own testimony, to support a finding Steve comingled or depleted trust assets.[7] With respect to accountings of Ronald's trust, Steve acknowledged he "did not know there was a request for quarterly reporting." Steve further testified: "I'm not for sure what accounting that you're wanting. I don't know what format you want. You have all the bank statements. I'm not sure what accounting you want to see. The taxes of the Trust? Those have been to the attorneys and stuff."

Steve explained he had been "willing to serve" as trustee of Ronald's trust to "[t]ake care of my mom" and "[m]ake sure there were enough assets for her to be able to live the rest of her life." Similarly, he stated he had been willing to serve as Judy's conservator "for the same reasons, make sure my mom is taken care of." The following colloquy then took place:

> Q. Do you believe that you discharged your duties as trustee for Ronald's trust to the best of your knowledge and ability? A. I believe so. I mean, the first year and a half or so there was only like seven checks written out of it. That trust is really inactive. It just pays taxes and some bills on properties and stuff like that. It's kind of hard to discharge duties of that trust when it can't even pay for the legal fees it has because it's so cash poor. That's one of the reasons we're trying to sell that property.
> Q. In terms of your conservatorship for Judy Rolenc, do you believe you've discharged your duties to the best of your knowledge and ability? A. Yeah. I mean, Mom's in a good place. She's cared for. You know, her bills are paid. You know, so her health financial wise she's taken care of. If she has nurses, doctors, accountants, financial advisors, trust lawyers, oversight by this Court, yeah, I think

---

[7] Insofar as Scott challenges checks or gifts by the trust in 2017 or 2018 prior to the court's determination Judy was not competent, we find this claim unpersuasive.

she's been pretty well taken care of. Like Stan, I can always do better. You always try to do better. You can find out what you're a little short on and try to be better. There's a lot of oversight on this, like I said.

Q. I believe you testified you have advisors that help you to serve in your capacity both as trustee for Ronald and for conservator of Judy; right? A. Yes. Yeah. I get lots of people in the group now.

Q. Okay. Including me, legal counsel; correct? A. Legal counsel and, like I said, advisors. She pays a lot of money out for all that stuff. And astronomical legal fees. . . . Like I said, the judge is the big boss on all this. I'm just the manager. I have enough oversight with trust attorneys and conservator attorneys. I mean, I'm not for sure how I can take the football and go the wrong direction.

Steve believed "it would be punishment" to Judy's trust if a bank was ordered to serve as successor trustee. He explained:

The cost we would have there and any efficiency of getting anything done, getting the lawyers up to speed in this and all future proceedings, which in my estimate will be [twenty] of them, you know. I found myself a long time ago when I told my dad back in the—been in the '80's that all this would end up in a lawsuit someday. I was wrong because it's going to end up in [twenty] of them. And having a bank's attorney going through all this punitive to my mom's estate.

Steve further stated if and when the trust assets "are wiped out," "[a]t that point it will be me probably that takes care of Mom, me and Stan out of our own pocket."

Ultimately, the district court found:

As to Steve, he currently serves as the successor trustee for Ronald's trust and is Judith's conservator. Scott alleges Steve is also conflicted out due to his involvement in a pending lawsuit, i.e. a counterclaim filed against him in a separate action involving Ronald's trust and further alleges that Steve is not performing his fiduciary duties. As to the latter assertion, this court agrees that Steve has fiduciary responsibilities he is obligated to meet under the terms of the trust and pursuant to Iowa Code [sections] 633A.4202 and 633A.4211. Concerning Ronald's trust, upon request, the trustee is obligated to provide quarterly accountings setting forth the receipts and disbursements and a schedule of all assets and liabilities consistent with Section 2(B) of said trust. A review of the court file certainly reflects Scott's request for this information. Compliance with this request is not discretionary. For analysis purposes only, this court assumes that Steve has been less than diligent in assuring

his compliance with this quarterly accounting. Even if true, Steve's alleged lack of diligence is certainly correctable and is not fatal to Steve continuing to serve as successor trustee. As to the other alleged fiduciary breaches asserted by Scott, this court has yet to determine the merits of the same. Until that occurs, this court can't assume any breach has occurred. He should first be given the opportunity to defend his actions. This court declines to remove him as a successor trustee for the same.

Scott further argues that Steve is conflicted out (or should be) due to the counterclaim asserted against him related to the sale of the farm ground. He argues Steve's circumstances are no different than what was considered by the court in deciding Scott should not serve in the role of successor trustee for Ronald's trust. This court disagrees. Steve is acting in his capacity as successor trustee and conservator to enforce the sale of the farm ground as a result of the auction. Ironically, Scott is critical of Steve's failure to act in his fiduciary capacity as noted above and offers the same as a reason to remove him as successor trustee. In this instance, Scott is now arguing that because of Steve's actions as trustee to enforce the sale of the farm ground, he should be removed. Scott's situation was completely different in that Scott filed lawsuits against the trust. Steve is acting on behalf of the trust. There is no conflict precluding him from continuing to serve as successor trustee.

We conclude the district court did not abuse its broad discretion in allowing Steve to remain trustee. *Cf. Schildberg*, 461 N.W.2d at 191 (noting removal must be in "the best interests of the operation of the trust"); *see also Kron*, 2021 WL 1907150, at *5.

Upon our review of the issues raised on appeal, we affirm the court's order recognizing Steve as successor trustee.

**AFFIRMED.**